ELIZABETH J. NORTON vs. PHŒNIX MUTUAL LIFE INSURANCE COMPANY.

N, who had for many years been a local agent of a life insurance company, held a policy of the company on his own life in the name and for the benefit of his wife. Renewal certificates signed by the secretary of the company were placed in his hands to be used in receiving payment of premiums upon policies held in his vicinity, all of which contained a provision that they should not be valid until the premium was paid and they were countersigned by N as agent. Upon the payment of the premium upon the policy in question in 1866, such a

renewal certificate was taken by *N* but was not countersigned by him as agent. *N* died in 1867, and after his death a similar receipt was found among his papers for the premium due in 1867, but was not countersigned by him. Held, in a suit by his widow on the policy, that the court committed no error in charging the jury that the receipt under the circumstances was *primâ facie* evidence of the payment of the premium. (Two judges dissenting.)

ASSUMPSIT upon a life insurance policy; brought to the Superior Court in Hartford county, and tried to the jury, on the general issue with notice, before *Pardee, J.*

The policy was upon the life of Seth P. Norton in the sum of $2,000, and was taken out in the name of the plaintiff, who was his wife, for her benefit if she should be living at his death, and for the benefit of her children if she should not then be living.

On the trial the plaintiff, having made proof of the policy, offered in evidence the following renewal receipts:

| Annual Premiums, | $114.90 |
|---|---|
| | 28.73 |
| Cash part of Premiums, | 71.82 |
| Interest on 4 notes, | 17.28 |
| Excess of note surrendered, over dividend, | |
| Extra Premium, | |
| Cash due | $89.10 |
| Note in addition for | 71.82 |
| Received the above this day of   18 | |
| By | Agent. |
| At | |

" Office of Phœnix Mutual Life Insurance Co., Hartford, Conn., June 20th, 1866.

Policies No. 7233 and 7234, insuring the life of Seth P. Norton, are hereby continued in force for one year, to wit, until the 20th day of June, 1867, at 12 o'clock, noon. But this Certificate Receipt shall not be valid or in any manner binding on this Company, until the Premium Interest and Assessment is paid as per margin, and this receipt countersigned by S. P. Norton.

J. F. BURNS, *Secretary.*"

| Annual Premiums, | $114.90 |
|---|---|
| Interest on 4 notes, | 13.68 |
| | $128.58 |
| Less dividend, | 57.00 |
| Cash due, | $71.58 |
| Received the above this day of   18 | |
| By | Agent. |
| At | |

" Office of Phœnix Mutual Life Insurance Co., Hartford, Conn., June 20th, 1867.

Policy No. 7233, insuring the life of Seth P. Norton, is hereby continued in force for one year, to wit, until the 20th day of June, 1868, at 12 o'clock, noon. But this Certificate Receipt shall not be valid,

or in any manner binding on this company, until the Premium Interest and Assessment is paid as per margin, and this Receipt countersigned by S. P. Norton.

J. F. Burns, *Secretary*."

On the back of these certificates was printed the following: ". The insured will please take notice that no receipt for premium on this policy is valid unless signed by the president or secretary of the company, at Hartford, Conn., and that no agent has authority to interline, alter or otherwise change any policy, or to receive any premium after date of its being due, without special permission from the office of the company."

The defendant objected to the admission of these certificates because no evidence was offered to show that the premiums, interest and assessment had been paid, as per margin in the receipts, and the certificates had never been countersigned by S. P. Norton, as provided in them. The court over-ruled the objection and admitted the certificates.

The plaintiff also proved that Seth P. Norton was her husband at the time of the issuing of the policy, and at the time of his death, which was on the 29th day of October, 1867; and that he was at the time of his death, and for many years had been, the local agent of the defendants in their insurance business at Collinsville. The plaintiff testified that the payment of premiums upon the policy had been made by her husband from his own estate and not from her moneys or estate, that she had no knowledge that any premium had been paid upon the policy, that she had never had anything to do with her husband's financial matters, that she had confided all her own matters of business exclusively to him, and that she had never seen the renewal receipts until after her husband's death.

The defendants requested the court to charge the jury that, to entitle the plaintiff to recover, she was bound to prove that the annual premiums had been paid at the times and in the manner provided in the policy, and that the certificate receipts were not evidence of such payments; and that, as the policy was in the name of Elizabeth J. Norton, and she was by the policy to pay the premiums, the certificate receipts in her

hands could only be binding on the company in case she had
actually paid the money, or the receipt had been countersigned
by S. P. Norton, agent of the company.

The court did not so instruct the jury, but charged them as
follows :

" The burden of proof is on the plaintiff to show that the
annual premiums on this policy have been paid at the times
and in the manner specified in the policy, or that the payment
has been waived. But if the jury shall find that the annual
premium due on the 20th of June, 1867, was paid on or
before the said 20th day of June, such payment received by
the company would be a waiver of the payment of the pre-
miums for previous years, and the certificate or receipt dated
June 20th, 1867, under the circumstances of this case, is
*primâ faciê* evidence that such payment had been made."

The jury returned a verdict for the plaintiff, and the de-
fendants moved for a new trial for error in the charge of the
court.

*Goodman* and *Hyde*, in support of the motion.

*J. B. Foster* and *Robinson*, contra.

BUTLER, J. The sole question presented by this record is,
whether the court below erred in holding the certificate of
renewal *primâ faciê* evidence of payment of the premium.

It must be conceded that the certificate contains the usual
operative words to constitute a renewal, and that, if they were
not accompanied by any qualifying condition, they would
authorize the presumption that all acts required of the policy
holder to entitle him to an extension, including the payment
of the premium, had been performed. The real question
therefore is, whether there is anything in the conditions which
accompany the renewal clause that rebut that presumption.
I do not think there is.

The first condition is that the renewal clause of the certifi-
cate shall not be operative until the premium is paid. To
this, under the circumstances of the case, no importance
should be attached. It cannot rebut the presumption.

If Seth P. Norton had been the payee of this policy, and had not been the agent of the defendants, and that had been the only condition attached, it clearly would not have rebutted the presumption of payment of the premium. It is not to be supposed that the officers of this company would send to a policy holder a certificate of renewal with such a condition annexed, unless the premium was paid, or some agreement of waiver or for giving time had been made. In reference to such a certificate in possession of a policy holder, the reasonable presumption therefore would be that the company prepared their certificates in blank, in that way, to avoid the danger of having them obtained surreptitiously, and to enable them to make defence in case of loss where the certificate was delivered pursuant to some special agreement which had not been performed. And under the circumstances of this case that condition can have no greater effect in this certificate.

Although Elizabeth Norton was the payee named in the policy, the notice and the undisputed evidence show that it was in substance and effect a contract between Seth P. Norton and the defendants. It was the common case of a husband insuring his life in the name of his wife to make provision for his family, and must have been so understood by the company. That condition therefore should not, as I think, be permitted to operate to rebut the presumption of payment arising from the renewal clause.

The remaining condition is that the certificate should be countersigned by Seth P. Norton, *as agent.*

It seems perfectly obvious that such countersigning could not have been in the contemplation of the parties. In relation to it Norton was, and must have been understood to be, a *principal* and not an agent. As he was to pay the premiums and was to retain the certificate, it was of no possible importance to either party that he should sign it. The evidence shows that he was not the agent of the plaintiff in the transaction. Although the policy was in her name she was a mere payee, and the company did not expect him to collect the money of his wife, as *their agent,* and countersign and leave

the certificate with her as in ordinary cases of insurance obtained and renewed by agents. Such expectation would be as unnatural as in a case where the policy is made payable to a third person as *security merely*, and the company know it, and such policies are very common. The truth evidently is that the blank certificates of the company were prepared in this way to be used by the local agents where they furnished policies to third persons, and one of them was used in this case, but without intending that it should operate otherwise than as an unqualified renewal. And this view is confirmed by the course of dealing between the parties. The premium, it appears, was paid in 1866, and a like certificate given.

We have been referred to a manuscript opinion in the case of *Badger* v. *The American Popular Life Insurance Company.* In that case the Supreme Judicial Court of Massachusetts decided that a policy for the life of a local agent, sent to him, containing a condition that the policy should not be valid till countersigned by him, must be so countersigned. The facts of the case do not appear, and the opinion of the court is very brief. The court held that the insurance company had a right to insert the condition, and the insured was bound to comply with it, and that they would not inquire into the motives of either. It is obvious that that learned court was satisfied, from the evidence or otherwise, that the condition was intentionally inserted. Under the circumstances of this case we are not so satisfied. Looking to the real character of the contract it was a senseless condition, and we think that it was not contemplated by the parties that it should be an operative one.

There is another reason why the decision referred to is not applicable. The court in that case say that there was no evidence "tending to prove a waiver of the condition," and the clear implication is that, if there had been, the decision would have been different. In this case there is evidence tending to prove a waiver. The policy was of a peculiar character, and had a market value of about $800, because by its terms it could be surrendered to the company and that sum obtained from them for it. There was a like certifi-

cate issued to Norton in 1866, when it is admitted that the premium was paid, and that certificate embraced another policy also, and was not countersigned. Norton had been many years employed by the defendants as a local agent, and was such at his death, and we must presume that he understoood his business, that he was in frequent communication with the defendants, and that he would not have neglected to countersign both those certificates if there had not been some understanding that the condition was not to be operative, and was waived. Norton is dead, and the company, mistakenly, as we think under the circumstances, plant themselves on a sheer technicality, and explain nothing. Under such circumstances we cannot say, as the court said in Massachusetts, that there was not evidence tending to prove a waiver of the conditions of the certificate, and we are satisfied that justice has been done. A new trial is not advised.

In this opinion CARPENTER, J., concurred.

PARK, J. In this case the court charged the jury that the certificate of the renewal of the policy, dated June 20th, 1867, was, under the circumstances of the case, *primâ .faciê* evidence that the premium on the policy for that year had been paid; although the certificate declares, in express terms, that it shall not be valid, or in any manner binding on the company, until the premium, interest, and assessment are paid, as per margin, and the receipt countersigned by S. P. Norton. The margin referred to contains merely a statement of Norton's account with the company concerning the policy for that year and the balance due for the premium.

It seems to me that the certificate of renewal, instead of being *primâ faciê* evidence that the premium was paid, shows manifestly the contrary. It bears evidence on its face that when the company sent the certificate to Norton, no money was received to apply on the premium for that year. Its language is, " This certificate receipt shall not be valid, or in any manner binding on this company until the premium is paid."

Norton was an agent of the company, and that part of the certificate which requires that the receipt shall be counter-signed by him was evidently designed for cases where third persons were insured, and has no application to his policy. He can in no sense be regarded as an agent of the company in affecting his own insurance or any of its renewals. So far as his policy was concerned the company dealt with him directly, and the clause in the certificate which I have quoted would have been stricken from the certificate if the company had received the premium. It says, substantially, the money has not been received; and therefore declares that the renewal shall not take effect until the premium is paid.

And further, the blank receipt for the premium in the margin of the certificate still remains in blank. No one could execute it but the company, for it is manifest Norton was no agent of theirs to collect the premium of himself. He could not give a receipt for his own money and bind the company by the transaction.

What ground then is there for claiming that the certificate bears upon its face *prima facie* evidence that the premium was paid. What circumstance is there, which can legitimately be taken into consideration in connection with the certificate, that shows such fact? Written instruments may be read in the light of surrounding circumstances when they are ambiguous, but not otherwise. This is familiar law. 1 Swift Dig., 180. What ambiguity is there in the certificate regarding the payment of the premium? It is entirely silent on the subject. It says nothing whatsoever, ambiguous or otherwise, that indicates that the premium had been paid.

But it is said that a similar certificate was sent to Norton the year before, and sending him the one in question conduces to show that the premium of the preceding year had been paid, and this establishes the mode of dealing between the parties. If the mode of dealing can be established by one transaction, it was a fact for the consideration of the jury upon the question whether payment of the premium for the year 1867 had been made, and has nothing to do with the question of law involved in the charge of the court

It is further said that Norton was in possession of the certificate of renewal, and that this is strong evidence that the premium was paid. · But the instrument declares that it shall have no effect whatsoever until the premium of that year is paid. This clause was as much binding on Norton, for aught that appears, as it was in cases where third parties were insured. The only difference in the cases consists in the mode adopted by the company in making the contracts. In the one case they acted in person; in the others by representatives. But the mode of making a contract has nothing to do with its binding obligation when made, or the rules of law regarding its construction. This clause then must be construed as binding on Norton. But if the possession of the certificate is entitled to any weight, it is a consideration manifestly *dehors* the question of law I am considering. It should have been left to the jury to determine whether the company would deliver to Norton an instrument perfectly worthless till he complied with the condition on which it should take effect, that is, till he paid the premium. The question involved in the charge is, does the instrument itself show, as matter of law, that Norton complied with the condition?

It is further claimed that manifest justice has been done in the case, and that therefore a new trial should not be advised, although the court may have erred in its charge to the jury. But how can this be true, when the charge of the court substantially deprived the defendants of a trial by the jury of the questions of fact now relied upon by the plaintiff to establish this claim?

The motion shows that the only question in dispute on the trial was whether the premium had been paid. The plaintiff offered the certificate in evidence to prove the fact, and the defendants, believing that the plaintiff had failed to make out her case, offered no evidence on the subject. In this state of the case the court charged the jury that, under the circumstances, the certificate was *primâ facie* evidence that the premium had been paid. This was telling them substantially to return a verdict for the plaintiff.

The defendants therefore have had no trial by the jury of the question of fact; and indeed no trial, either of law or fact, for this claim concedes that the ruling of the court, which decided the cause, was erroneous. All the trial that the defendants have really had, has been in this court, which is wholly a court of law.

Again, if a new trial can be refused in this case on the ground that justice has been done, a similar course might be taken in every case of error; and this court would be required, in motions for a new trial, to review all the questions of fact involved in the trial of the cause in the court below. This would be contrary to all precedent hitherto established, and would require that all the evidence in such cases should be certified to this court; for without the evidence before us we cannot intelligently say, as we cannot here, that justice has been done.

I think a new trial should be advised.

In this opinion LOOMIS, J., concurred.