BURNICE A. ELLIOT v. GRAND LODGE ANCIENT ORDER OF UNITED WORKMEN OF KANSAS.

No. 23.

1. MUTUAL-BENEFIT INSURANCE—*Construction of Contract.—Forfeiture.* A forfeiture will not be enforced unless it is clearly demanded by the established rules governing the construction of written agreements and a violation of the precise condition of the contract. Courts will construe a contract of insurance liberally, so as to give it effect, rather than make it void; and conditions which create forfeitures will in case of doubt be construed most strongly against the insurer, and only a stern legal necessity will induce such a construction as will nullify the policy.

2. NON-PAYMENT OF ASSESSMENT—*no Forfeiture, When.* When, in an action to recover upon a certificate of insurance issued by a mutual-benefit society, and the defense is, forfeiture for non-pay-

ment of an assessment, the evidence shows that the assured has paid to the lodge sufficient funds to cover all legal assessments made against him, no forfeiture can be declared, even though the lodge may have made such an appropriation or application of the funds paid in as to ostensibly show that the assured was in arrears for the last assessment made prior to his death.

MEMORANDUM.—Error from Ottawa district court; R. F. THOMPSON, judge. Action on an insurance certificate, brought by Burnice A. Elliot against the Grand Lodge Ancient Order of United Workmen of Kansas. Judgment for defendant. Plaintiff brings the case here. Reversed. The opinion herein was filed December 14, 1895.

THE statement of the case, as made by GILKESON, P. J., is as follows :

Action brought in the district court of Ottawa county, Kansas, by Burnice A. Elliot, on a benefit certificate issued by the Grand Lodge A. O. U. W. to Frederick A. Rose, to recover the sum of $2,000. Trial had before court (jury waived), upon an agreed statement of facts and testimony. The court made special findings of fact upon three unimportant propositions, and found generally for the defendant upon all others. Judgment rendered against plaintiff for costs. Motion for new trial overruled, and excepted to. The undisputed facts are, that the defendant in error is, and was at all the times mentioned, an incorporated mutual society, organized for fraternal and beneficial objects. On August 24, 1888, Frederick A. Rose was a junior-workman-degree member of Charity Lodge No. 155, A. O. U. W., of Minneapolis, Kan., which said lodge was under the jurisdiction as a subordinate lodge of said defendant in error. On August 24, 1888, said Rose made application for the workman degree and a beneficiary certificate, and in said cer-

tificate the plaintiff in error (his mother) was named as the beneficiary. On August 31, 1888, Rose received the workman degree. On October 3, 1888, certificate No. 18207 was issued, for the sum of $2,000. On or about the 16th day of May, 1889, said Rose died. The application for said certificate contained the following condition :

"I further agree, that the certificate to be issued thereon shall have no binding force whatever until I shall have taken the workman degree, and until countersigned by the master workman and recorder of Charity Lodge No. 155."

The said certificate was not countersigned by said officers until the 3d day of October, A. D. 1888, and was then countersigned in the form following :

"We, the undersigned, master workman and recorder of Charity Lodge No. 155, do hereby countersign and attach the seal of this lodge hereto, rendering this certificate valid and in force, this 3d day of October, 1888, and upon said date delivered to him."

From September, 1888, to April, 1889, the following assessments were levied by Charity lodge : Assessments Nos. 11 and 12, for deaths in 1888, $2 ; assessments No. 1, 2, and 3, for deaths in 1889, $3 — making a total for assessments, $5. Assessment No. 11 was October 1, 1888, on the death of H. B. Daniels, which occurred September 8, 1888. Rose had paid all his dues, and in addition thereto he, prior to his death, paid into said Charity lodge the sum of $5, as follows : On making application, $1 ; on assessment No. 11, for 1888, $1 ; on assessment No. 12, for 1888, $1 ; on assessment No. 1, for 1889, $1 ; on assessment No. 2, for 1889, $1—$5.

*Thos. Dever*, for plaintiff in error.

*Joseph E. Riggs*, and *D. C. Chipman*, for defendant in error.

The opinion of the court was delivered by

GILKESON, P. J. : This case has long been under consideration, not so much on account of any doubts entertained as to the legal principles involved, as to the difficulty in applying them to the circumstances of the case.   To make this application, it has been necessary to carefully and thoroughly examine the constitution of the order, so as to place thereon a construction which will as near as possible reconcile all its provisions and render them consistent and harmonious, and at the same time give force and effect to the plain terms of the application for and the certificate issued ; and in this we have no little difficulty, for it is inartistically drawn — its meaning obscure, even apparently inconsistent and contradictory when the language used is only considered.   Many things of vital importance are left to be supplied by conjecture, which, if they had been followed up, would have materially lessened our labor, and could have been understood at a glance.   Such terms as "hereinbefore provided," "hereinafter placed," are used, without a word or even a reference thereto, either before or after, to show how it was provided or placed.   The question we are called upon to decide may be reduced to this : Was Frederick A. Rose, at the date of his death, in default upon any assessment lawfully made against him?   This we are compelled to answer in the negative.

The application for a beneficiary certificate (section 2, article 10) provides, among other things :

"I further agree, that the certificate to be issued thereon shall have no binding force whatever until I shall have taken the workman degree, and until countersigned by the master workman and recorder of Charity Lodge No. 155."

28—2 APP.

Upon the certificate, and forming a part thereof, we find the following :

"We, the undersigned, master workman and recorder of Charity Lodge No. 155, do hereby countersign and attach the seal of this lodge hereto, rendering this certificate valid and in full force, this 3d day of October, 1888.     J. W. BARR, *Master Workman.*
"Attest: E. W. WRAY, *Recorder.*"
[Seal of Charity Lodge No. 155.]

Now, under the terms of the application, there are two things necessary to entitle Rose or his beneficiary to any insurance, viz., (1) the reception of the workman degree, and (2) the countersigning of his certificate, neither one of which, by itself, would be sufficient; they must both concur, and, until they do, the contract is not complete.   True, negotiations have been had, but have they resulted in a contract? This, of course, depends upon the question whether the respective parties have come to an understanding upon all the elements of the contract, so that nothing remains to be done.   There is a distinction between a contract of insurance or policy and an agreement to insure.   The latter may, and in point of fact does, exist prior to the drawing up and delivery of the policy, and contemplates the delivery of the policy as the consummation of the contract.   In general, where the policy provides that the countersignature of an agent is requisite to the validity of the policy, the countersignature must be had.   It is evidence of the completion of the contract.  ( 1 May, Ins. (3d ed.), § 65 ; *Prall v. Society,* 5 Daly, 298 ; *Noyes v. Insurance Co.,* 1 Mo. App. 584 ; *Norton v. Insurance Co.,* 36 Conn. 503 ; *Hardie v. Insurance Co.,* 26 La. Ann. 242 ; *McClave v. Association,* 55 N. J. L. 187, 26 Atl. Rep. 78 ; Nibl. Mut. Ben. Soc., p. 280, § 130 ; *Badger v. Insurance Co.,* 103 Mass. 244.)   In the last-cited case it

was held : "A policy of life insurance which provides that it shall not be in force until countersigned by A. F. B. is invalid until so countersigned." The policy declared upon in this case contained the following provision : "Nor shall this policy be in force until it is countersigned by A. F. Badger, agent at Boston." A. F. Badger, the agent at Boston, was the assured, and also the agent whose duty it was to countersign it. On his death the policy was found among his papers. Chief Justice Chaplin, in delivering the opinion of the court, said :

"He received the policy, had it in his power to make it a valid contract by countersigning, but he did not do this, and consequently the policy never became in force. We need not inquire into the motives of the company for inserting this condition, nor into Badger's motives for neglecting to comply with it. It is sufficient that the company had a right to insert it and insist upon it."

"Certificates of membership" (as they are sometimes called) issued by mutual benefit associations are, in legal contemplation, policies of insurance, and the courts have, with great uniformity, treated them as such. (*Assurance Fund v. Allen*, 106 Ind. 593, 7 N. E. Rep. 317 ; May, Ins. § 550*a*, and authorities there cited.) Now, if we read in connection with the application that portion of section 2, article 10, which immediately precedes the form given for applications, viz. : "Each member, upon receiving the junior workman degree, and applying for the workman degree, shall make application for the rights and benefits of the order, in substance as follows," etc.— we find that it is not necessary for the applicant to have received the workman's degree, but merely to apply for it before he receives the certificate ; nor need he have received the certificate to entitle him to the degree.

And section 5, article 10, bears us out in this construction, viz. :

"Upon application for a beneficiary certificate, duly approved by the grand medical director, as provided in section 2, article 3, of this article, the grand recorder shall immediately issue and forward the certificate to the subordinate lodge, where it shall be countersigned by the master workman, with the seal of the subordinate lodge attached, and attested by the recorder. The certificate shall be then delivered to the member, and a record of the same be made in the books of the lodge, and he shall, from and after the date of receiving the workman degree, be entitled to all the rights and privileges of the order," etc.,

Clearly showing that the certificate may be issued prior to the taking of the degree, but that both must occur before he becomes entitled to the benefit or liable to the burdens. And while the same section provides, "and he shall, from and after the date of receiving the workman degree, be entitled to all the rights and privileges of the order," it does not say, nor can it be construed to mean, that either one alone made him a full member or entitled to all the rights and benefits, but strongly indicated that each one entitles him to some rights and benefits, and both together entitle him to all. For instance, one who has taken the workman degree but not received a certificate would, we suppose, have the rights and privileges of meeting with the order, being instructed in the mysteries, given the signs, grips, and password, if any there be, voting at the meetings, etc. ; while he who has received the certificate and not yet taken the degree would only be entitled to the rights and privileges of a junior workman ; but when both prerequisites have met in one and the same person, then he would be entitled to all rights and privileges, including insur-

ance.    It is therefore very clear to us that the rights
of a member of a mutual benefit society are twofold :
those which arise out of the contract of membership
and those which arise under his contract for insur-
ance.    The corporate rights of a member are subject
to the control of the corporation.    His rights as an
assured person rest on his contract of insurance with
the society.    (*Rosenberger v. Insurance Co.*, 87 Pa. St.
207.)    And this doctrine is recognized by the defend-
ant in error, and the construction given by us to the
constitution is upheld in its agreed statement of facts,
article 7, which reads :    '' On the 31st day of August,
1888, Rose received the workman degree, and he be-
came on that day a workman-degree member of Char-
ity Lodge No. 155, so far as possible to become before
receiving the beneficiary certificate.''

We find, by further reference to the constitution,
that a valid certificate is necessary to charge the
member with any liability.    This distinction is very
marked whenever the certificate is referred to.    Sec-
tion 5, article 10, provides that the identical fund out
of which losses are paid is made up of sums received
for each valid certificate, etc.    Again, the same sec-
tion provides that the recorder shall forward, upon
receipt of notice, '' $1 for each valid certificate '' ; and
section 9, article 10, provides that '' the financier shall
keep a book wherein all assessments of the beneficiary
fund shall be entered against each member holding a
valid certificate.''    And much stronger is the lan-
guage used in reference to the forfeiture.    It expressly
declares that only the holder of a certificate shall be
liable to forfeiture, viz. : ''Any member *holding* a cer-
tificate of the beneficiary fund having failed or neg-
lected to pay said assessment into the beneficiary fund
in his subordinate lodge shall forfeit all his rights

under said certificate ''—not, as contended for by defendant in error, that any member holding a certificate, or having received the workman degree, who shall fail or neglect to pay, shall forfeit. This, then, brings us to the question the answering of which determines the parties' rights in this action. When did Frederick A. Rose become a full member of the order, the holder of a *valid* certificate, entitled to the benefits, and subject to assessment? The only answer that can be given is: October 3, 1888, the day the certificate was countersigned and delivered to him, he having previously to this received the workman degree. This being true, it must necessarily follow that he was not liable to assessment No. 11 of 1888, (upon the death of H. B. Daniels, which occurred on September 8, 1888,) and made by subordinate lodge October 1, 1888. "A society has no power, in the absence of a provision therefor in its certificate or rules and regulations, to charge a member with losses arising prior to the membership." (Nibl. Mut. Ben. Soc., p. 511; *Evarts v. Accident Ass'n*, 16 N. Y. Sup. 27.)

Now, let us for a moment examine the several provisions of the constitution which refer to or throw any light upon the subject of assessment. Section 3, article 10, provides:

"Each applicant, upon signing the aforesaid application for certificate, shall pay to the financier the sum of $2, *$1 of which shall be known as the beneficiary fund*, and shall be placed as hereinafter provided, the remaining $1 to be forwarded by the recorder of the subordinate lodge to the grand recorder after the applicant has received the workman's degree (the same to be placed in the grand lodge fund), together with the aforesaid medical examiner's report and application for certificate," etc.

How the $1 of the beneficiary fund is "hereinafter"

placed, we are unable to find any direct reference thereto, but if we read in connection therewith section 5, article 10, we find :

"Upon the death of any brother lawfully entitled to participate in the beneficiary fund as herein-before provided, it shall be the duty of the subordinate lodge of which he was a member to officially notify by prescribed form of death notice the grand recorder, who shall on the first day of the following month notify each subordinate lodge in his jurisdiction, when the beneficiary fund on hand in each subordinate lodge (*the same being $1 for each valid certificate*, and such sums as may have been received for certificates renewed) shall immediately be forwarded to the grand lodge," etc.

Now, mark the language : What is to be forwarded? There can be but one answer : "The fund consisting of *$1 for each valid certificate*"; not $1 paid upon application for certificate, but for *each valid certificate;* that is, a certificate properly countersigned and delivered to the applicant. And until the certificate is valid, the $1 paid upon application had no right to be placed in the beneficiary fund, nor has the subordinate lodge any right to forward it with the fund ; but, it should hold it to the credit of the applicant, to be distributed when the certificate became valid and subject to assessment, "as an advance assessment," and this can be readily inferred from other portions of said section 3, article 10, *supra*, which provide for the holding of the other dollar paid at the same time until the applicant has taken the workman degree ; and this is the only reasonable construction that can be placed upon the section, for the applicant may never take the degree, or, having taken it, never receive a valid certificate.

The subordinate lodge is usually the agent of the

supreme lodge for the purpose of collecting assessments and transmitting the same, and a member who has paid the same to the subordinate lodge will be protected, although the money was never sent to the supreme lodge. (2 Am. & Eng. Encyc. of Law, 179; *Erdmann v. Insurance Co.,* 44 Wis. 376; *Schunck v. G. W. & W. Fond,* 44 Wis. 369.) The case last cited was thorougly considered, having been twice before the court, and we think the principles therein declared apply with full force to the case at bar.

It is admitted in this case that Rose was not in arrears of dues, and also that he has paid into the subordinate lodge the sum of $5, *i. e.,* on making his application, $1; on assessment No. 11, $1; on assessment No. 12, $1; on assessment No. 1, $1; and on assessment No. 2, $1; total, $5. But the grand lodge claims that he has not paid assessment No. 3, of $1, and, hence, that this certificate is forfeited. Now, if we charge him with what he is legally liable for, viz., on making application, $1; on assessment No. 12, $1; on assessment No. 1, $1; on assessment No. 2, $1; on assessment No. 3, $1; total, $5, we find that he has deposited or paid in sufficient to pay all that is required of him, and that the grand lodge has received every cent it is entitled to, and surely it cannot complain.

"When the money deposited by a member to meet future assessments was sufficient to meet all lawful assessments made before his death, he will not be in default by reason of the fact that the society used the money by applying it on assessments made prior to his becoming a member." (Nibl. Mut. Ben. Soc., p. 511; *Evarts v. Accident Ass'n,* 16 N. Y. Sup. 27.)

"Where a society had, under an illegal by-law, retained sick benefits due a member to an amount largely in excess of an assessment on the contract of

insurance, it was held that such an assessment should have been paid out of the money so retained, and that a forfeiture for non-payment should not be declared." (Nibl. Mut. Ben. Soc., p. 510.)

Now, let us look at section 8, article 10. It reads:

"And upon the death of any brother lawfully entitled to participate in the beneficiary fund as hereinbefore provided, it shall be the duty of the subordinate lodge of which he was a member to notify officially, by prescribed form of death notice, the grand recorder, who shall, on the first day of the following month, notify each subordinate lodge in his jurisdiction, when the beneficiary fund on hand in each subordinate lodge (the same being $1 for each valid certificate, and such sums as may have been received for certificates renewed) shall immediately be forwarded to the grand recorder, and a record thereof entered upon the minutes. The issuance of the notice of assessment by the grand recorder, as hereinbefore provided for, shall constitute the making of an assessment of $1, which must be paid to the lodge by each member holding a certificate or having received the workman's degree (provided such member has received his certificate or workman's degree prior to the date of the death on which the assessment is made). Written or printed notices of assessment shall be sent through the mail or delivered in person by the financier, not later than the 8th day of the month in which the notice was issued by the grand recorder; and not later than the 28th day of said month in which said notice of assessment was given, any member holding a certificate of the beneficiary fund having failed or neglected to pay said assessment into the beneficiary fund in his subordinate lodge shall forfeit all his rights under said certificate. Should two or more notices of assessment be received at the same time, the subordinate lodge shall immediately forward the beneficiary fund on hand, as hereinbefore provided, which amount shall pay one notice. On or before the 1st day of the following month, it shall forward

to the grand recorder $1 for each valid certificate so held at that time under its jurisdiction for each remaining notice. Any subordinate lodge failing or declining to make returns as above, so as to insure their receipt by the grand recorder during the first week of each month, shall again be notified by the grand recorder, and said second notice shall be mailed to the master workman, the foreman, the recorder, and, if there be one, the district deputy of such lodge in arrears; and should such returns fail to be made within one week from the date of said second notice, all certificates under the jurisdiction of said lodge shall stand suspended until said returns are made.''

Reading this section in connection with other sections of the constitution, we think it must be construed to mean that the amount which the subordinate lodge is required to forward to the grand recorder, as the beneficiary fund on hand, is to be determined by the number of valid certificates in force at the time of the death on which such notice is issued, together with such additional sums as may have been received for certificates renewed prior to the date of the notice, and that the assessment made by such death notice is made upon and to be paid by all members holding certificates at the date of the notice (the first day of the month following the death), and who had, prior to that day, received the workman's degree; but no member is liable to such assessment unless he had received his certificate prior to the date of the death and the workman's degree between that date and the first of the month, or unless he had received the workman's degree prior to the date of the death and the certificate after such date, but prior to the first of the month. We adopt this as the only reasonable and consistent construction, even though it seems to be at variance with a strict literal meaning of some of the language used in section 8. This construction will

give force and effect to the next clause of the same section, viz. :

"Any member holding a certificate of the beneficiary fund [on the first of the month in which they receive the subordinate lodge notice] having failed or neglected to pay said assessment [the one made by the lodge] into the beneficiary fund in his subordinate lodge shall forfeit all his rights under said certificate."

This construction is upheld, and is in accord with the next provision of this section :

" Should two or more notices of assessments be received at the same time, the subordinate lodge shall immediately forward the beneficiary fund on hand, as hereinbefore provided, which amount shall pay one notice. On or before the first day of the following month, it shall forward to the grand recorder $1 for each valid certificate so held at that time under its jurisdiction for each remaining notice."

What time? The first day of the month following the one in which the assessment was made.

This case is peculiar in its circumstances, and the determination thereof depends upon the construction to be placed upon the constitution, and the application of general principles to it as a whole rather than to any single provision thereof. As we have said, the constitution is so inartistically drawn that it is difficult to give it a perfectly consistent interpretation. But upon the fundamental and controlling questions, (1) when said Rose became a member of the organization and subject to assessment, (2) whether Frederick A. Rose was in default at the time of his death, we are perfectly satisfied with the conclusion we have reached. Moreover, we have kept it in mind that it is a settled principle of law that forfeitures are not favored ; that they will not be enforced for the alleged violation of the provision of the contract when the

provision which it is claimed has been violated is susceptible of two constructions, unless the act or failure to act violates the provisions of the contract when given either of the constructions. And this rule has been adopted in Kansas:

"As in all other cases, forfeiture of the insurance provided by mutual-benefit associations is not favored by the courts. They, in construing the conditions of membership when a forfeiture is claimed, will preserve, if possible, the equitable rights of the holder of the certificate of membership." (*Modern Woodmen v. Jameson*, 48 Kan. 718.)

And the weight of authority is to the same effect: *Miner v. Benefit Association*, 63 Mich. 338; *Wiggin v. Knights of Pythias*, 31 Fed. Rep. 122; *Ballou v. Gile*, 50 Wis. 614; *Mason v. A. O. U. W.*, 30 Minn. 509; *Burkland v. Insurance Co.*, 102 Pa. St. 262; *Society v. Weatherly*, 75 Ala. 248; *Insurance Co. v. Hazelett*, 105 Ind. 212.

And we doubt whether any rule of law is more fully established than this. And while courts should, and will, extend all reasonable protection to the insurers by allowing them to hedge themselves about by conditions and limitations intended to guard against fraud, carelessness, negligence, want of interest, etc., they will, nevertheless, enforce this salutary rule of construction, and take into consideration the fact that as the language of the conditions is theirs, and it is therefore in their power to provide for every possible case, and to make themselves understood with certainty, they are to be construed most strongly against them.

And if a question be equivocal, so that it is susceptible of being answered in more than one way, and differently from different standpoints, it will not be open to the company, which prepared the question, to

object that it is not answered in the true sense.  (May, Ins. § 175.)

The judgment in this case will be reversed, and the cause remanded with instructions to render judgment herein in favor of Burnice A. Elliot, plaintiff below, in accordance with the views herein expressed.

All the Judges concurring.