No. 23,924.

BERTHA A. GREEN, *Appellee*, v. THE BANKERS LIFE INSURANCE COMPANY OF NEBRASKA, *Appellant*.

SYLLABUS BY THE COURT.

1. LIFE INSURANCE—*Surrender of Policy—No Fraudulent Inducements Shown.* In an action to reinstate an insurance policy and to recover thereon, the record examined and no evidence discerned therein to justify a finding that the insured had been induced to surrender it through fraud nor on any terms other than those embraced in the policy.

2. SAME—*Agreement May Be Set Aside Only for Mutual Mistake, Fraud or Want of Authority.* A misunderstanding of the terms of a bargain by one of the parties thereto is insufficient to relieve such party from its terms. Equitable relief can only be invoked on a showing of mutual mistake, or fraud, or want of authority.

3. SAME—*Annual Premiums in Default—Application of Loan Value of Policy Toward Payment.* There is no general rule making it the duty of an insurer to apply the loan value of a policy toward the payment of annual premiums in default; and no such duty when the policy itself prescribes the rights and liabilities of the parties when such default occurs.

4. SAME—*Surrender of Original Policy in Exchange for a Paid-up Policy Question of Fact.* The terms of the policy in litigation, together with the retroactive resolutions of the defendant announcing its determination to pay its war losses in full, examined, and held to be valid and binding for the full amount of $1,000 for an extended term of four years, 260 days, unless there was a binding surrender of the original policy in exchange for a paid-up policy of $150.

5. SAME—*Statute of Limitations.* The statute of limitations did not run during the period when the insured was in the army nor during the period thereafter when the beneficiary did not know and had no means of knowing that the insured had been killed in action.

Appeal from Mitchell district court; WILLIAM R. MITCHELL, judge. Opinion filed October 7, 1922. Reversed.

Green v. Insurance Co.

*R. L. Hamilton,* of Beloit, *Petrus Peterson, Robert W. DeVoe, Jesse B. Strode,* and *Maxwell V. Beghtol,* all of Lincoln, Neb., for the appellant.

*R. M. Anderson,* of Beloit, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action to reinstate an insurance policy and collect the amount alleged to be due thereon. The policy was for $1,000; it was issued to Ralph S. Green; and his mother, the plaintiff, was named as beneficiary. After payment of the first three annual premiums of $24.70 each, the insured entered the army, and considerable correspondence passed between the defendant and one T. P. Downs, a Mitchell county banker, touching the effect on Green's policy by his enlistment. The record does not show that Downs was the authorized agent of Green in conducting this correspondence, although that fact may be inferred from the circumstances. In answer to Downs' inquiries, the defendant pointed out the specific clauses in the insurance policy touching the effect of the holder's entrance into the army—that the policy was void unless a military permit were procured, and this the company avowed its readiness to grant. The defendant company also stated that, as per the terms of the policy, it would have no cash surrender value until it was five years old, but that it would have a loan value of $29 at the end of three years. It also referred to and reiterated the options contained in the policy—that at the end of three years, if no further premiums were paid, the insured would have extended insurance for $1,000 for four years, 260 days, or in lieu thereof, and at the option of the insured, a paid-up nonparticipating policy for $150. The company's liability, if the insured should die in military service, was also explained—that it would pay cash surrender value only, or would continue the insurance in full if an extra premium were paid.

Green did not pay any further premiums, but the banker, Downs, wrote to the company that Green desired cash for the surrender value of the policy. A number of letters on this subject passed between Downs and the company, but on November 2, 1917, Downs forwarded the policy to the company with the following letter:

"Nov. 22, 1917.

"GENTLEMEN:

"Herewith, I hand you policy of Ralph S. Green, which has been properly surrendered, and trust that you will send us your check for the amount of cash return due on this policy. Mr. Green wants the cash settlement but if

you cannot give such, he will take a paid-up policy for $150.00 which you mention.

"Awaiting the return of your check, if you find such possible to send, we are,          Respectfully,      T. P. Downs, *Ass't Cashier."*

This was answered:

"Nov. 27, 1917.

*"The German Nat'l Bank, Beloit, Kansas.*

"Gentlemen:—We acknowledge receipt of the Green policy No. 56527 with the permits attached. You will find enclosed the duplicate. There being no cash value due on the policy we are issuing paid-up insurance and the new contract will be issued to you in a few days.      Very truly yours,

*"Treasurer."*

A paid-up policy for $150 was issued; it was received by Downs and eventually came into the hands of plaintiff's attorney, and was never returned to the company.

At some time, date not shown, the defendant company adopted a resolution that if experience should show that it could afford to pay more than the cash surrender value on its war risks, it would do so; and after the armistice it adopted another resolution to the effect that its financial affairs were in such a gratifying condition that the company could and would pay its war losses in full.

Young Green was killed in battle in France, and proofs of death and demand for payment of the original policy of $1,000 were presented to the company. This was refused, but tender of the amount specified in the paid-up policy for $150 was made and declined; and this action followed.

The jury made many special findings, most of which were adopted by the court, and judgment entered in plaintiff's behalf for $1,000, and for interest, and for an attorney's fee.

The plaintiff alleged that the $1,000 policy was surrendered through fraud practiced upon her and her son in that the defendant led them to believe they would receive $150 in cash as its surrender value, and that they never agreed to accept a paid-up policy for $150. The jury's findings are to the same effect. But there is not a syllable of evidence to justify that allegation nor such a finding of the jury. The policy contract itself and all the correspondence clearly and repeatedly showed that there was no cash surrender value to this policy until it should be five years old. There was no promise that the company would pay $150 in cash for the surrender of the policy. The company, in justice to its patrons and to sound business principles, could not agree to pay

$150 cash for the surrender of a policy on which it had only re-
ceived three payments of $24.70 each.

One difficulty with this case is that the correspondence touching
the surrender of this policy was between Downs and the company,
and the record is not at all clear that Downs was authorized to act
for Ralph Green. A receipt for the nonparticipating policy of $150
bears the signatures of Ralph S. Green and the plaintiff, but the
plaintiff swears that the receipt was altered after she signed it—
that she signed a receipt for $150 which she expected to receive in
cash without delay, but that it was altered after she signed it so
as to make it read as an acknowledgment of receipt of a paid-up
policy for $150. And that matter, while it may overtax the cre-
dence of an appellate court, was believed by the jury; so the sig-
nificance of the receipt must be disregarded. However, this adverse
finding is not necessarily fatal to the company; it merely deprives
it of an item of evidence which would prove a settlement and ac-
ceptance as it contends. The jury similarly found that the $1,000
policy was only surrendered upon the understanding of the insured
and beneficiary that $150 in cash would forthwith be paid thereon.
But a one-sided misunderstanding is of no consequence; only a
mutual mistake, or a fraud by one of the parties, or an unauthor-
ized settlement with the company by Downs, the banker, would
justify a reinstatement of the original policy.

We next come to the point affected by the fact that the regular
annual payment of $24.70 on the $1,000 policy was in default when
Ralph Green died on the battlefield. It is argued for plaintiff that
at that time the policy had a loan value of $29, from which the
company could have paid the premium. There is a general rule
that where an insurer has in its hands funds legally or equitably
belonging to the insured sufficient to pay a premium or assessment
when due, it is the insurer's duty to apply them and prevent a
forfeiture. (See notes in 23 L. R. A., n. s., 304; L. R. A., 1918-D,
1014; 29 Cyc. 177.) Somewhat analagous cases of our own are:
*Benefit Association v. Swenson*, 49 Kan. 449, 30 Pac. 405; *Fraternal
Aid Association v. Powers*, 67 Kan. 420, 73 Pac. 65; *Supreme Lodge
v. Welsch*, post, p. 55, 57 Pac. 115; *Elliot v. Grand Lodge*, 2 Kan.
App. 430, 42 Pac. 1009.

But it can hardly be said to be the general duty of an insurer to
apply the loan value of a policy to the payment of premiums, in
the absence of any such provision in the contract; and here the
policy itself prescribed what the obligation would be if and when

a default in payment of premium should occur. It provided that if there should be a default of payment in any premium after the first three premiums were paid, the policy would be automatically nonforfeitable and would "without any action of the insured or payment of further premiums continue as nonparticipating paid-up term insurance for the principal sum insured but without loan or surrender value." The schedule of values embodied in the policy, in part, reads:

| End of year. | Paid-up value. | Extended insurance. years. | days. | End of year. | Cash value. | Loans. |
|---|---|---|---|---|---|---|
| 3d | 150 | 4 | 260 | 3d | —— | 29 |

In this case, therefore, when the insured made default in his fourth year's premium payment the policy automatically became one for $1,000 good for four years and 260 days. If the surrender of the original policy and its exchange for a paid-up policy of $150 was not authorized by the insured, it was valid when young Green died on the battlefield, except for the fact that the policy did not fully cover war risks. But the subsequent patriotic and generous resolutions of the defendant declaring its ability and intention to pay its war losses in full cured that imperfection. (*Ellis v. Fraternal Aid Union,* 108 Kan. 819, 197 Pac. 189.)

In justice to the company, however, we must hold that part of the theory and contentions of the plaintiff in the trial court and in her brief here cannot be sustained. The company committed no fraud of any sort; it never promised to pay $150 in cash for the surrender of the policy, and there is no foundation for that contention in the record. There was no fraud in the company's statements that the policy had no cash surrender value and did not cover war risks, although it later saw its way to pay such risks. If it were clear that Downs, the banker, acted for Ralph S. Green with authority, the defendant would win this lawsuit. That is the uncertain point in it, and the one which will necessitate a new trial.

The defendant's point touching the statute of limitations is not sustained. It could not be sustained even if the case should be permitted to turn on a question of fraud. The limitation would not include the time young Green was a soldier, nor the time thereafter when the plaintiff did not know whether her son were alive or dead. (*Lewis v. Publishing Co.,* 111 Kan. 653, 208 Pac. 254.)

There being no question of fraud in the case, the defendant's contention that the plaintiff cannot sue for an alleged fraud practiced on her son is likewise eliminated.

Reversed and remanded for a new trial.