No. 37,020

New York Life Insurance Company, *Appellant*, v. William Dickensheets and Elfreda M. Dickensheets, *Appellees*.

(193 P. 2d 649)

Opinion filed May 8, 1948.

*Richard S. Righter,* of Kansas City, Mo., argued the cause, and *Roscoe Graves,* of Emporia, and *Robert D. Youle,* of Kansas City, Mo., were with him on the briefs for the appellant.

*Everett E. Steerman,* of Emporia, argued the cause, and *E. H. Rees,* of Emporia, was with him on the briefs for the appellees.

The opinion of the court was delivered by

Smith, J.: This is an action to reform an insurance policy on the ground of mutual mistake. Judgment was in favor of defendants. Plaintiff has appealed.

The petition alleged that on April 9, 1924, plaintiff issued to defendant its policy of a given number requiring a semiannual payment of $106.85 and on August 13, 1924, defendant requested in writing that such policy be changed to a policy on the endowment plan maturing at age sixty-five for $6,850. The petition then contained an allegation, as follows:

"It states that pursuant to such application, appellant issued to appellee William S. Dickensheets, effective as of April 9, 1924, its policy on the endowment plan maturing at age 65, for the sum of $6,850, Policy No. 8723158, with a semiannual premium of $135.15; that this policy and the plan of insurance which it evidences contemplate payment of the semiannual premium of $135.15 up to the date on which insured becomes 65 years of age; that insured represented to appellant that he was born January 8th, 1890, so that his 65th birthday would be January 8, 1955. It alleges that it is essential actuarially and by the science of life insurance that the insured pay premiums under said policy for 31 years, and that this was the intent of the parties; that by a mutual mistake of both appellant and appellee the period for which payments are to be made was stated in the policy to be 21 instead of 31 years."

The petition then alleged that defendant had retained the policy and in April, 1945, claimed he had completed payments on it according to its terms and plaintiff had just then learned that the figures "21" and the words "twenty-one" had been written in the policy instead of "31" and "thirty-one"; and payments of the premium for thirty-one years were necessary to mature the policy and defendant claimed by reason of the mutual mistake he was not obligated to pay premiums for the last ten years of the endowment period. Reformation of the policy was asked changing the figure "21" to "31" where the number of years in which the insured is obligated to pay the policy is specified.

The wife of defendant was made a party because she is the beneficiary. She answered stating she was the beneficiary and that the policy was issued as pleaded. Defendant Dickensheets filed an amended answer in which he denied that there was any mutual mistake, also denied that he understood he would be required to pay premiums for thirty-one years, but alleged that he was advised by the agent of plaintiff at the time of purchasing the policy that it would endow upon his sixty-fifth birthday upon the payment of twenty-one annual premiums; that he had paid all these premiums and plaintiff had accepted them without claiming mistake and was, therefore, guilty of laches and was estopped from asking reformation of the policy. He also pleaded the so-called incontestible clause of the policy.

By cross petition defendant stated he had paid four semiannual premiums while the action was pending. He asked judgment against plaintiff for this amount.

For reply, plaintiff demurred to the parts of the answer which denied that there was a mutual mistake to the defense of the incontestible clause and the defense of laches and asked that they be stricken from the answer, admitted the four semiannual payments by defendant, and otherwise pleaded a general denial. No formal action was ever taken on this demurrer and the action proceeded to trial.

About much of the evidence there is no dispute. It appears from exhibits, photostatic copies of which are included in this abstract, that in April defendant executed an application for insurance with plaintiff on a form with which many of us are familiar. It tells some of the family history of defendant, gives some personal details about him, that he was aged thirty-four at the time, speaks of

what other insurance he had, says he is applying for a "20 Pay Life" policy with premiums payable semiannually but does not give the amount of the premium payments. A policy of that description was issued by plaintiff and delivered to defendant and proved not satisfactory to him. On August 13, 1924, he signed a document wherein reference was made to the above policy and the company was requested to change it to a policy on the endowment plan maturing at age sixty-five for $6,850. There is no mention of the amount or number of premium payments.

Under date of April 9, 1924, the policy, the subject of this action, was issued. It states on its first page it is in the amount of sixty-eight hundred and fifty dollars, states various benefits and the last paragraph on the page is as follows:

"Endowment Insurance Payable at Death or at age *65* with Option of Monthly Life Income or of Partial Endowment and Paid-up Life Policy. Premiums Payable for *21* Years unless dividends applied to shorten premium paying period. Disability Benefits. Double Indemnity for Fatal Accident. Annual Participation in Surplus."

At the left of this paragraph appear the words "Age *34.*" The figures "34" are written with a typewriter. In the paragraph the figures "*65*" and "*21*" are written with a typewriter. The rest is printed. This action was brought to reform the policy by changing the figures "21" to "31."

The next page contains no provision of interest to us here.

The page which follows it has a paragraph which reads:

"This contract is made in consideration of the payment in advance of the sum of *$135.15*, the receipt of which is hereby acknowledged, constituting the first premium and maintaining this Policy for the period terminating on the *Ninth* day of *October* Nineteen Hundred and *twenty-four*, and of a like sum on said date and every *SIX* calendar months thereafter during the life of the Insured until premiums for *Twenty-one* full years in all shall have been paid from the date on which this Policy takes effect."

The figures "135.15" and the letters "Ninth," "twenty-four," "SIX" and "Twenty-one" were all written in with a typewriter. The rest was printed. This action was brought to reform the contract by changing the words "twenty-one" to "thirty-one" so that as changed the paragraph would require the payments to be made for thirty-one years rather than twenty-one.

The last page of the policy when folded, as policies usually are, presents at the top the name of the company, next the name of the

insured, the amount of the policy and of the premium. And at the bottom almost the last statement is as follows:

"Endowment Insurance.
Payable at Death or at age *65* with
Option of Monthly Life Income or
of Partial Endowment and
Paid-up Life Policy.
Premiums payable for *21* years, unless
dividends applied to shorten premium
paying period.
Disability Benefits.
Double Indemnity for fatal accident.
Annual Participation in Surplus."

The figures "*65*" and "*21*" are written with a typewriter. The rest is printed. The above statement is really descriptive of the policy rather than a part of the contract. There is no dispute whatever about the above facts.

The trial court had the policy and the other exhibits before it.

At the trial an actuary for plaintiff, Mr. Bowerman, was permitted to testify by means of an affidavit. He testified that defendant made application for a 20-payment life policy in the amount of $5,000 with double indemnity and disability benefits; that he requested a change and plaintiff without changing the number of the policy issued an endowment policy maturing at age 65 in the amount of $6,850 with double indemnity for accidental death and total disability provisions. A copy was introduced. He then testified as follows:

"A characteristic feature of endowment insurance is that the amount of the premiums charged is sufficient to mature the policy for its face amount at the time provided for in such policy. The premiums must be paid annually, semi-annually, or quarter-annually from the date of the insured's age when the policy is issued to the age at which the policy becomes an endowment. As applied to this application, as Dickensheets' age was 34 and the policy was to mature as an endowment at age sixty-five, it was mathematically necessary, according to the science of insurance, for the insured to make semi-annual payments of $135.15 each over a period of 31 years to mature the policy as an endowment at age sixty-five.

"When the policy (Exhibit D) was written at the Home Office of Appellant, the clerk preparing it made a typographical error in that on the face of the policy, at the bottom of the inside or first page, where the printed provision 'Premiums Payable for —— years unless dividends applied to shorten premium paying period.' appeared, the figures 21 were typed into the blank space instead of the figures 31 (the difference between the insured's then age of 34 and the maturing age of 65). On the third page of the policy (Exhibit

D), the words "twenty-one" were erroneously typed into a blank calling for the number of premium paying years, instead of the correct number of "thirty-one." On the cover or outside page, the figures 21 were erroneously typed into a blank referring to the number of years of premium payments instead of the correct figures of 31."

Letters between the parties showed that defendant claimed to be bound to pay only twenty-one premiums which he had already paid and that the plaintiff claimed he should pay premiums for ten more years.

The actuary then testified in his affidavit as follows:

"Mr. Bowerman then testified that according to actuarial science, it was not mathematically possible for 21 years' premiums of $135.15 semi-annually to enable the Company to mature a 31 year endowment issued at 34 maturing at 65 for $6,850, but that premiums must be paid for the full 31 years. Insured applied for a 31 payment 31 year endowment policy in the face amount of $6,850, maturing at age 65. This was the policy he was issued except for the three errors in inserting 21. While it is now contended by insured that he has a 21 payment 31 year endowment he made no request for limited payment in his conversion application.

"It is the invariable rule that premiums are payable during the entire endowment period unless it is specified that the number of years' payments shall be a lesser number. Such a policy would be termed a limited payment endowment policy. If, as here, the application makes no mention of a limited payment period, it is understood that the policy desired is one having the same number of premium payment years as the period of endowment, or here, 31 years. Further, the agent's rate book did not include any 21 payment 31 year endowment figures. Hence, any request for such premium figures or other values of the policy would have to have been made to the home office. If any such figures had been quoted, the records of the home office would show appropriate entries. It is thus evident that no such premium rate was ever quoted to the insured. On a limited payment endowment contract, not only would the premium have been higher, but the cash values, reduced paid-up value, continued term insurance value, and loan value would have been larger than on Exhibit D. Thus, the policy is consistent only with an error in the number of years for which premiums are payable.

"The insured asks that the policy be regarded as fully paid to mature at 65 for $6,850. The premium of $135.15 is the correct premium on a 31 payment 31 year endowment, including disability and double indemnity benefits. The corresponding premium on a 21 payment 31 year endowment of the same face amount would be $165.70, or $30.55 semi-annually greater than the premium actually paid. The tables of cash, reduced paid-up, continued term insurance, and the loan value, are those of a 31 payment 31 year endowment. If this were a limited 21 payment policy, the paid-up value at the end of 21 years would be the face of the policy, rather than the sum of $4,946 shown on the table, page 2 of the policy (i.e., $722 per $1,000). All tables shown on the policy are the correct ones for a 31 payment 31 year endowment policy.

Thus, to grant the insured's contention would be to discriminate in his favor, in violation of the law of many states, including New York State.

"If no premiums are paid past the 21st year, according to actuarial science, it would be impossible mathematically for the cash value to increase beyond the amount shown on the table, page 2 of Exhibit D or $553 per $1,000 of face value."

There was other evidence that the rate necessary for a person at age thiry-four to mature an endowment policy for $6,850 at age sixty-five would be $135.15 payable for thirty-one years or until insured was sixty-five. Plaintiff's rate book for 1924 was put in evidence. Reference was made to the table of cash surrender values appearing in the policy.

The original record of premium payments on the policy in question was offered by the plaintiff to show that there was nothing on it to indicate payments were to be made for only twenty-one years and plaintiff's objection to it was sustained.

For the defense, the defendant was asked to state the conversation he had with the agent for the insurance company at the time the policies were exchanged. Counsel for plaintiff objected to this conversation because it had not been shown that the agent had authority to vary the terms of a written contract. The objection was overruled. Thereupon the defendant testified he told the agent he wanted a policy on the endowment plan that would pay up in twenty-one years and start paying him at age sixty-five; that the agent told him he would get the policy changed to one with such a plan.

In rebuttal, the agent of plaintiff testified about changing the policies; that the language in the policy "policy on the endowment plan maturing at age 65" had a well-defined meaning in insurance circles; that the premiums would have to be paid until insured was sixty-five or the difference between sixty-five and the age of insured when the policy was taken (in this case thirty-one years). He testified that he had no independent recollection of explaining the number of payments, and that the only types of special insurance his company writes were settlement agreements conforming to the insured's desires and substandard insurance which was written on a regular contract at a higher premium according to the valuation of the risk, and in 1924 the company was not issuing a twenty-one-year payment, thirty-one-year endowment policy but was issuing an endowment at the age of sixty-five policy.

At the conclusion of the evidence defendant requested permission

to amend his answer by pleading the bar of the statute of limitations. Plaintiff objected and permission to amend was denied.

The issues were submitted to the court without a jury. The trial court found that the reformation of the insurance contract as prayed for should be denied and that the defendant was entitled to judgment for costs. Judgment was entered in accordance therewith.

Plaintiff asked for a new trial on account of abuse of discretion of the trial court, accident and surprise, erroneous rulings, that judgment was given under the influence of passion and prejudice, was contrary to the evidence, and newly discovered evidence. This motion was overruled.

The plaintiff appealed generally. The defendant Dickensheets appealed from the order overruling his motion for permission to amend his answer.

The specifications of error of plaintiff are that the court erred in entering judgment for defendants as under the pleadings, the law and the evidence, the plaintiff was entitled to reformation; that the court erred in refusing to grant the plaintiff equitable relief, including reformation of the contract because under the pleadings, the law and the evidence, the plaintiff was entitled to such relief; that the court erred in ruling that the plaintiff was not entitled to the relief prayed for for the same reason; because the court erred in making and entering judgment in favor of defendants and against the plaintiff; because the judgment was not sustained by competent evidence; because the court erred in entering judgment in favor of defendants and against the plaintiff; because the greater weight of the credible evidence was in favor of the plaintiff; the court erred in making and entering judgment in favor of defendant Dickensheets on the supplemental cross petition of Dickensheets because under the pleadings, the law and the evidence he was not entitled thereto; because the court erred in excluding competent, relevant, material and proper evidence, that is, Exhibit No. 4, which has been heretofore referred to in this action; because the court erred in admitting incompetent, irrelevant, immaterial and improper evidence, which is the conversation of Dickensheets had with the agent of plaintiff at the time he took out the policy; because the court erred in overruling plaintiff's motion for a new trial.

The plaintiff on appeal states that the question is whether under the facts shown at the trial the plaintiff and defendant insured committed a mutual mistake, the effect of which entitled plaintiff to

reformation of the policy, and therefore whether the trial court erred in denying such relief.

It states that the first six specifications of error are intended to present this question. An examination of these six specifications of error will disclose that they ask this court to weigh evidence. Stated succinctly, the plaintiff alleged that both parties made a mistake when the policy was issued and the policy contained the figures and words "21" instead of the figures and words "31" in appropriate places.

The defendant in his answer states there was not a mistake at all; that he asked for and intended to buy an insurance policy that would begin to pay him when he reached sixty-five, upon which he would only have to make twenty-one payments. It needs no citation of authorities to substantiate the proposition that under such issues the burden was on the plaintiff to prove there was a mutual mistake. It takes a mutual mistake to warrant reformation of a contract or such inequitable conduct on the part of one party as to amount to fraud. The rule is stated very well in a case cited by plaintiff in *Algeo v. Employers Indemnity Corporation,* 119 Kan. 186, 237 Pac. 879. There we stated:

"Where no fraud is claimed and the reformation of an instrument is sought solely on the ground of a mistake, it is essential that there be mutuality of mistake; that is, that both parties understood that the real agreement was what plaintiff alleges it to be, but had unintentionally prepared and executed one which did not express the true agreement." (p. 188.)

There is no fraud claimed in this case.

Plaintiff places great stress upon the fact that the science of insurance and insurance experience require that, for a policy to mature at a certain age, payment of premiums must be made on it every year until the insured reaches the age when the policy is to mature. This argument would be persuasive if the insurance company had been dealing with an actuary or one versed in insurance terms. It was, however, dealing with a dispatcher for a railroad. There is no evidence at all that he was more trained in the terminology and general science of insurance than the average man would be.

The plaintiff argues that his testimony that he requested a limited payment endowment policy is in conflict with the application he executed. He did execute the request that his policy be changed to the endowment plan at the age of sixty-five. We have yet to see any evidence, however, that one not thoroughly acquainted with in-

surance terms would know that such a policy as a matter of law would require payments until the insured had reached the age of sixty-five. There are cases when the policy would be such a glaring evidence of mistake that no ordinary person could be heard to say that he was not mistaken as to the terms. However, we do not find this to be such a case. The argument of the plaintiff really asks us to hold that as a matter of law under the circumstances in this case the defendant cannot be heard to say that he wanted to buy a policy that would mature at the age of sixty-five and require only twenty-one payments. We cannot do that. For one reason in the first page of the policy appear some terms, about the form of which there is no dispute at all, which were not clear to one not versed in the science of insurance. Courts have held in certain cases that the circumstances all were such as to require a holding that there was a mutual mistake or that the conduct of the party was so inequitable as to amount to fraud. On the other hand, there are many cases where the courts have held that under the circumstances pointed out the situations did not require reformation. After all is said and done, it is a question of fact as to whether or not there was a mutual mistake.

The trial court heard the evidence and decided this was not a mutual mistake; that the defendant was not mistaken. There certainly was evidence to substantiate that finding.

The next point argued by the plaintiff is that the court erred in excluding Exhibit No. 4 from the record. This was the record from the office of the plaintiff of the defendant's policy in question. The policy was in good standing. The record was never brought to the attention of the defendants. It should not have been admitted. Under this head the plaintiff also argues the court erred in permitting Dickensheets to relate his conversation with the agent of the company at the time he took out the policy because it permitted defendant to vary the terms of a written contract with oral evidence. That is not what the evidence was admitted for. It was admitted on the question as to whether or not the defendant was mistaken as to the terms of this policy. He wants it adhered to. The company wants to change it.

The next question argued by the plaintiff is that action to reform the policy was not barred by the incontestible clause.

In view of what has been said heretofore, this point does not require our attention. Furthermore, in view of what has been said, it

follows that the court did not err in giving judgment for the defendant on his cross petition for the premiums paid to keep the policy in effect while this litigation was being carried on, nor does the cross-appeal of the defendant require our attention.

The judgment of the trial court is affirmed.