No. 37,688

C. L. SNIDER and MARIE J. SNIDER, *Appellees*, v. HOWARD L. MARPLE, also known as H. L. MARPLE, and MARIAN A. MARPLE, also known as MARIAN MARPLE, *Appellants*, and TAFT STEPHAN, and JULIA STEPHAN, and THE FOURTH NATIONAL BANK IN WICHITA.

(213 P. 2d 984)

Opinion filed January 28, 1950.

*Ray H. Tinder,* of Wichita, argued the cause, and *W. A. Kahrs* and *Robert H. Nelson,* both of Wichita, were with him on the briefs for the appellants.

*Roy H. Wasson,* of Wichita, argued the cause, and *Paul W. Schmidt,* of Wichita, was with him on the briefs for the appellees.

The opinion of the court was delivered by

THIELE, J.: This was an action to reform articles of agreement, a warranty deed and an escrow agreement so as to correct the description of the real estate included therein, to quiet title to the real estate under the corrected description, or in the alternative for money damages. From a judgment in favor of the plaintiffs, a part of the defendants appeal.

For purposes of information the following statement is made. Lots 14, 15, 16 and 17, on First street, now Second street, in Whitney's Addition to Wichita, are each 140 feet long north and south and 25 feet wide east and west. On the north end of these lots is a dwelling facing west and an unattached garage known as 302 North Meridian street, and it is this property which is involved. On the

south end of these lots is a duplex facing south. Immediately preceding the chain of events giving rise to this action, the defendants Marple owned all of the lots and buildings.

In a preliminary way it may be said that attached to the petition are copies of the "Agreement of Purchase," "Articles of Agreement" and "Warranty Deed" therein referred to. In some instances there is variation between pleading and copy. Our statement refers to the copy.

In their petition plaintiffs alleged Marples' ownership of the above lots and that the duplex was located on the south 75 feet of the four lots and that the dwelling facing west was located on the north 65 feet of the lots; that Marples listed for sale with a real-estate broker the property known as 302 North Meridian, being the north 65 feet of the lots and on January 27, 1946, that plaintiffs, as prospective purchasers were, by an agent and associate of the broker, shown the dwelling, garage, clotheslines and posts and their location with reference to property lines and on the same day executed a preliminary agreement entitled "Agreement of Purchase" whereby they agreed to purchase from the Marples for a total consideration of $5,300 the "property known as 302 North Meridian, Wichita, Kansas," the agreement being later executed by Marian Marple; that on February 22, 1946, plaintiffs and Marples executed in triplicate "Articles of Agreement" whereby plaintiffs agreed to purchase and Marples agreed to sell "the north 50 feet" of the above lots and at the same time Marples executed a warranty deed therefor, and on February 23, 1946, a copy of the articles of agreement and the warranty deed were deposited with the defendant, The Fourth National Bank, as escrow agent under instructions for delivery of the deed which need not be noticed here; that at the time the various instruments were executed, the Marples stated, represented and believed that the dwelling, garage, clotheslines and poles referred to above were actually and wholly upon the lands described in the instruments and they intended to sell and convey to plaintiffs the north 65 feet, and that plaintiffs believed and understood that the dwelling, garage, clotheslines and poles were actually and wholly upon the lands as described in the instruments and that they would receive from the Marples title to all of the property known as 302 North Meridian, being the north 65 feet; that in truth and in fact the north 50 feet did not contain all of the dwelling, clotheslines and posts and that by mutual mistake and error on the part of the plaintiffs and Mar-

ples and their agents, the articles of agreement, warranty deed and escrow instructions did not and do not describe the property known as 302 North Meridian, being the north 65 feet, or conform to the actual agreement and understanding of the parties; that on February 23, 1946, Marples delivered to the plaintiffs the possession of 302 North Meridian, being the north 65 feet, and plaintiffs have since been in possession and have made all payments and otherwise complied fully with the articles of agreement and escrow instructions; that Marples, after February 24, 1946, and until about April 16, 1946, continued to have possession of the south 75 feet of the lots and on that day executed and delivered to Taft Stephan and Julia Stephan a warranty deed purporting to convey to the Stephans the south 90 feet of the above lots; that on that day the Stephans had actual and constructive notice of the rights of plaintiffs in that portion of the north 65 feet of the lots which was included in the description of the real estate conveyed to the Stephans; that the Stephans have never had possession of any part of the north 65 feet nor have they taken any action to assert any right thereto; that the Stephans claim some interest in and to the north 65 feet which clouds plaintiffs' title, but whatever right they have is inferior to plaintiffs' right; that the Marples at all times prior to their deed to the Stephans recognized plaintiffs' right in and to the north 65 feet and orally admitted to plaintiffs that the south line of plaintiffs' property was sixty-five feet south of the north line of the above lots; that on May 11, 1946, and subsequent to the delivery of the deed to the Stephans, the plaintiffs and Marples, by oral agreement caused the lots to be surveyed by the county surveyor and then learned for the first time that the north 50 feet did not cover and include the property which was intended to be conveyed and that part of the dwelling house and part of the clotheslines and posts were not covered by the description of the north 50 feet. Allegations that plaintiffs notified all defendants that they claimed to be the owners of the north 65 feet and that the deed and other documents should be amended, or that action would be brought need no notice here. The prayer was for reformation and for quieting title but that in the event the Stephans were found to be bona fide purchasers, plaintiffs should have judgment against the Marples for $2,500. In substance, the answer of Marples was a general denial of matters not admitted, the admissions covering ownership of the real property, the execution of the various instruments and the sale

to the Stephans, and a specific denial that the real-estate broker or his employers ever indicated to plaintiffs a frontage in excess of 50 feet, or that they intended to sell more to the plaintiffs, or that they represented any boundary line, or that there was any mistake or error. They also alleged that plaintiffs' attorney approved the title to the north 50 feet and as a result the escrow agreement was made; that plaintiffs have been guilty of negligence and laches under the averments of their petition and of the defendants' answer and are estopped to ask for or to obtain relief in equity.

The answer of the defendants Stephans need not be noticed.

The trial resulted in a judgment in favor of the plaintiffs and against the defendants Marples for $1,500, but if they should cause to be executed and placed in escrow, a warranty deed conveying to plaintiffs 15 feet of ground immediately south of the north 50 feet of the lots within thirty days then the judgment should be satisfied, but if they should fail to do so that execution should issue in favor of plaintiffs and against Marples for $1,500 and costs. Marples' motion for a new trial was denied, and as previously noted, they appealed to this court, specifying as errors the propositions later discussed.

The contentions presented by the appellants require a partial review of the evidence but, in view of the trial court's judgment, in our summary of the evidence all conflicts are resolved in favor of the appellees.

Prior to the events giving rise to the action the Marples owned all of the lots described. A former owner built the house on the north end of the lots facing Meridian street and referred to herein as 302 North Meridian. In excavating for the basement the dirt was spread from the north of the lots to a point 65 feet south and in a straight east and west line, the southern edge being the "terrace" later mentioned. In this area trees were planted and clotheslines and posts were installed. Just where the duplex was built is not shown but the northernmost portion of it did not extend north to the terrace. On January 27, 1946, the Sniders, in company with a real-estate agent, were looking at houses with a view to purchase, but found none that suited. The agent suggested they return to the real-estate office to see if any new listings had come in and it was then learned that 302 North Meridian had been listed for sale and the parties visited it, where the agent showed the Sniders through the house and over the ground calling attention to the clotheslines and the elm tree in the

rear and that the terrace was the south boundary. Thereafter the parties returned to the real-estate office and the agreement of purchase describing the property as 302 North Meridian was executed by the Sniders and the real-estate broker and later by Mrs. Marple. Later an abstract of title covering the entire four lots was submitted for examination. Some of the entries disclosed mortgages on the north 65 feet of the lots. A different abstract was furnished for later examination. It covered only the north 50 feet. The examining attorney did not know what property was being purchased. On February 23 formal articles of agreement for purchase were executed in which the property was described as the north 50 feet of the lots. This agreement acknowledged receipt of a down payment, made provision for payment of the balance, for the execution of a warranty deed from the Marples to the Sniders and for deposit in escrow of the deed and abstract of title to be delivered to the Sniders upon their performance. Shortly thereafter the Sniders went into possession and exercised their right of ownership as far south as the terrace line. Shortly after the Sniders moved in Mrs. Marple asked permission of the Sniders for one of their tenants in the duplex to use the clotheslines. At a later time Mr. Marple came over and stepped off the property, stated the terrace was the line and advised his tenant in the duplex and thereafter the tenant mowed the grass south of the terrace and the Sniders mowed it north thereof. At the time the Sniders moved in Marple was planting some shrubbery along his east line to the south of the terrace and asked Snider if there was any objection to his planting two or three remaining bushes north of the terrace line. About April 16, 1946, Marples sold the duplex to the Stephans, who suggested a survey. After the survey was made the Sniders learned that the description in the documents heretofore mentioned did not cover the real estate south to the terrace line, or the 65-foot line as believed by them or as shown to them. The 50-foot line as established by the survey was approximately one inch south of the eves of the house at 302 North Meridian and did not include the shade tree nor a part of the clotheslines, which had been said to be on the real estate being sold. Without review it may be said that Marples offered testimony in denial or dispute of much that has been related.

The appellants make some complaint that the trial court did not make separate conclusions of fact and of law. Although they make some contention that a request therefor had been made, they con-

cede there is no record of any such request. Just how we can say there was any prejudicial error is not made to appear and the complaint will not be noticed further.

Appellants make an extensive argument that a real-estate broker is a special agent and those dealing with him, if he exceeds his authority, do so at their peril. They contend there is no evidence to show that the real-estate agent, who showed the property to the appellees, had any authority from them to indicate where the south boundary line of 302 North Meridian was, and that if the agent indicated the terrace as being the line, such representation was beyond his power and authority. We do not find it necessary to discuss the proposition as presented. Assuming that appellants' objections to appellees' evidence on the particular point were proper and should have been sustained, there was no timely motion that such evidence be stricken. Under rule 53 of this court there is no presumption the evidence entered into the final disposition of the case. In addition we have also to consider other testimony. As is set forth in the summary of the evidence, it was shown that Marple indicated where the boundary line was on the occasion when he sought permission to plant some shrubbery to the north of it and also when the agreement about mowing grass was made. The testimony as to the agent's representation and the testimony last referred to bore on the same point. Even though the extent of the agent's authority was not shown and the testimony as to his statements and representations was incompetent, the other testimony was competent, and if believed, as it was, was sufficient on the point.

Appellants further contend that their demurrer to the appellees' evidence should have been sustained. They say it was mandatory that appellees establish beyond a reasonable doubt that there was mutuality of mistake, directing attention and quoting excerpts from *Algeo v. Employers Indemnity Corporation*, 119 Kan. 186, 237 Pac. 879; *Waddle v. Bird*, 122 Kan. 716, 719, 253 Pac. 576; *Regier v. Amerada Petroleum Corp.*, 139 Kan. 177, 30 P. 2d 136; and *New York Life Ins. Co. v. Dickensheets*, 165 Kan. 159, 193 P. 2d 649; and state that no fraud was claimed and there was no evidence showing mutuality of mistake. Their argument on the sufficiency of the proof as against a demurrer is not further expanded except as hereafter noted. There is no doubt as to the rule contended for but that appellees' proof failed to measure up to its requirements does not follow. Limited to appellees' evidence, and

subject to our following discussion as to mutuality of mistake, we think a prima facie showing was made that appellants intended to sell and appellees intended to buy all that part of the lots lying north of the terrace.

Apparently referring to the evidence as a whole, appellants argue that a mere mistake on the part of the appellees, in the absence of a showing of fraud, duress or undue influence on the part of appellants, is not sufficient ground to establish mutuality of mistake, our attention being directed to *Green v. Insurance Co.*, 112 Kan. 50, 209 Pac. 670. The gist of appellants' argument is that the written instruments clearly disclosed a frontage of fifty feet and all parties were aware of that; that appellees knew what fifty feet were and could have ascertained the exact boundary line, and that if there was any mistake, it was in their own opinion as to where the fifty-foot line was, and, inferentially that appellants knew where the fifty-foot line was and were not mistaken, and in support are cited authorities where it is said that the mistake must be as to a past or present fact and not a mere mistake of opinion, such as *Hodgson v. Mutual Benefit H. & A. Ass'n*, 153 Kan. 511, 521, 112 P. 2d 121, and *McMillin v. Farmers & Bankers Life Ins. Co.*, 167 Kan. 502, 507, 206 P. 2d 1061. The above argument is premised on consideration of only a part of the evidence and on inferences drawn therefrom which are unfavorable to appellees. We are of the opinion that the evidence summarized above, and inferences therefrom fairly to be drawn by the trial court, warranted a conclusion that the Marples did not intend by the use of the description of the north 50 feet of the lots to sell the property at 302 North Meridian with so limited a tract of real estate that the south line was only about an inch from the south side of the dwelling, and this is made more evident by the evidence concerning the use of the clotheslines, the planting of shrubbery, the portions of lots to be mowed and other matters reviewed, that the appellants intended to sell and the appellees intended to buy that portion of the lots north of the terrace, and that the description used was mistakenly used by both. The only contrary conclusion would be that appellants, if they knew where the fifty-foot line was, were not honest. We are of the opinion the evidence warranted a finding by the trial court that the description of the real estate as used in the articles of agreement and warranty deed was the result of mutual mistake.

In reaching the above conclusion we have not overlooked two further contentions of appellants, one that the language in the

warranty deed was clear and unambiguous, and the intent of the grantors was to be gathered from the four corners of that instrument (citing *Bennett v. Humphreys*, 159 Kan. 416, 419, 155 P. 2d 431) and that the articles of agreement were superseded and extinguished by the warranty deed (citing *Hampe v. Higgins*, 74 Kan. 296, 85 Pac. 1019). We need not discuss the two rules of law relied on for in our opinion neither is applicable. The very purpose of an action for reformation is to have an instrument altered to make it state the true agreements of the parties to it, and the fact the instrument sought to be reformed is couched in clear and unambiguous language does not preclude inquiry as to whether it expressed the agreement. The second rule contended for has application where a contract of sale of real estate is carried out and a deed is delivered and accepted. Under the facts before us it can have no application for the whole matter of contract and deed remains in an executory state. It is to be remembered that the purpose of this action was to reform the contract for prchase, the deed and the escrow agreement in order to make them conform to the actual agreement of the parties.

Although concededly the question was not raised in the trial court, and for that reason appellees object to its consideration here, appellants contend that the articles of agreement here involved constitute such a contract that payment of a registration fee was required, and, under G. S. 1935, 79-3107, such contract on which the registration fee had not been paid shall not be filed for record by any register of deeds and "shall not be received in evidence in any suit, action or proceeding, and no judgment, decree or order for the enforcement thereof shall be rendered, made or entered in or by any court of this state"; that there was no pleading that such tax had been paid, nor any proof thereof, that the contract should not have been considered, and therefore that the trial court's judgment must be reversed. In support they cite *Sparks v. Maguire*, 161 Kan. 529, 169 P. 2d 826. In that case the action was to enforce the contract and while that decision is informative, it is not applicable here, for in the action before us no judgment, order or decree for the enforcement of the contract was sought or rendered. If otherwise available to the appellants, the contention needs no further discussion here.

It has not been made to appear that the trial court erred in its judgment and the judgment is affirmed.