The opinion of the court was delivered by
Brewer, J.:
The facts of this case are in substance as follows: On the 27th day of Juné 1865 the plaintiff, Irwin, entered into a contract with the government to furnish fresh beef from, the bloeh to the troops at Laramie, D. T., the contract to be in force one year, or such less time as the commissary general of subsistence should direct, commencing on the 1st of July 1865. On the 11th of said July Irwin sold this contract to the defendants for a bonus of $1.50 per 100 lbs. upon all accepted beef under this contract. On said 11th of July Irwin gave to defendant Eyan a power of attorney, by which Eyan could draw and receipt for all the moneys due Irwin under the contract with the government. In June 1866 Irwin revoked the power of attorney, and stopped payment of the vouchers to defendants. Under this contract and power of attorney the defendants coul'd draw the money on the vouchers issued by the commissary at Laramie, payable to Irwin. The contract being in the name of Irwin, all-vouchers were drawn payable to him, and by aid of the power, the signature or order of Irwin was not needed to enable the defendants to obtain the money for the vouchers. On-the last of July or first of August, 1865, Everhardy, one of the defendants in error, went to Laramie to superintend the delivery of the beef, and the defendants in error put in under this contract from August 15th, 1865, to August 15th, 1866, 120,000 to 130,000 lbs., all that was required. While Everhardy was at Laramie, the defendants in error made another contract with the government, to furnish beef to the Indians in the vicinity of Laramie. Irwin was not a party to this contract, and had no interest in it. This contract was for “hoof” or “live” beef. The “block” and “hoof” beef *96 were both included in the vouchers issued in Irwin’s name. This was done without his authority or consent. After revoking the power of attorney, Irwin demanded and received $2,442 before he would indorse the vouchers, and without his indorsement no money could be collected on them. He-claimed that the vouchers included only beef put in under his contract. Of course, if this claim had been good, he would have been entitled under his arrangement with the defendants in error to the amount he received. But the jury have found that 162,800 lbs. included in these vouchers were put in under the contract made by defendants in error. Could he rightfully exact $1.50 per 100 lbs. for this amount? And if he could not, and yet did exact it, can they recover from him the amount exactéd? Notwithstanding their purchase from him of his contract, they had a fight to make the separate contract, put in beef, under it, and receive the entire contract price. And if they had taken a separate voucher therefor, they could have collected it, and he would have had no recourse on them. But they had no right to use his name as payee of a voucher for beef delivered on their contract, or indorse his name to such voucher when issued. He had sold them his contract, and given them a power of attorney to collect and receipt for all moneys which should become due under it. This was as far as they had any right to use his name, and any attempted use in excess of such authority justified him in taking the needed steps to prevent it. It was a matter of convenience to them, they say; but their convenience entitled them to no liberties with his name. The indorsement of a certificate of indebtedness, or a promise to pay, imposes on the party indorsing some liabilities. It is an act one cannot do for another without authority. And as soon as he found that under color of the authority given by the power of attorney they were indorsing his name upon vouchers other than those they were authorized to indorse, he had a right to revoke the power. By it alone would their use of his name have any semblance of authority. Only by revoking it could he fully protect, himself.- The revocation *97 then, was justifiable. The question then is thus left: .They took a voucher for moneys due them in Irwin’s name. He refused to indorse that voucher until he had been paid a certain sum. They paid it, obtained his indorsement, and collected the money. Can they recover the money paid for the indorsement ? Clearly not. It was an act he was under no obligations, legal or moral, to do. It was an act for their benefit, and one to his injury; for by it he assumed certain risks and obligations. The act therefore was ample consideration for a contract for the money paid. Whether the price paid was large or small, is immaterial. They paid for something they had no legal right to demand, and which they could not obtain except by purchase. There was no conceal-' ment, no misrepresentation. They bought with full knowledge of all the facts, bought with their eyes open, and must abide by the contract they made. 'Doubtless they thought it cheaper and better to pay Irwin his price, rather than return* the vouchers and have them made out in the names of the real owners.
The judgment of the district court must be reversed, and the case remanded for further proceedings in accordance with the views herein expressed.
All the Justices concurring.