H. B. LOWE v. WELLS FARGO & COMPANY, EXPRESS.

No. 15,526.    (96 Pac. 74.)

SYLLABUS· BY THE COURT.

1. MISTAKE OF FACT—*Payment of Money—Recovery.* Plaintiff's son was in the employ of the defendant at Emporia as express messenger. A part of his duty as such was to receive and receipt for packages ·at the trains, convey them to the express office, and take a receipt therefor. He received and receipted for a package containing money at a train, and no further trace of it could be found. The company demanded payment of the amount of money from the boy. The father, believing his son had dropped the package between the train and the express office and that it had thus been lost, paid the amount to the company. It was afterward learned that the son safely conveyed the package to the company's office· and placed it with other packages, but failed to take a receipt therefor; that another employee of the company stole the package, squandered the money, and the company never recovered it. The company was protected by surety bonds as to both employees. After the facts were discovered the father demanded from the company a return of the money paid, which was refused, and he brought this suit. *Held,* the money was paid under a mistake of fact and the plaintiff is entitled to recover.

2. ——— *Avoidance of Alleged Contract.* Upon the payment of the money by plaintiff the company executed and delivered to him a receipt therefor, to which was added: "It is hereby agreed that in case we find this package of money, or any part of it, the amount recovered is to be refunded to the said H. B. Lowe." *Held,* that this contract, if the acceptance made it a contract, should be avoided by the mistake of fact under which it was made.

Error from Lyon district court; FREDERICK A. MECKEL, judge. Opinion filed May 9, 1908. Reversed.

STATEMENT.

THE case was tried without a jury, upon the following agreed statement of facts, from which the issues in the petition may fairly be inferred:

"Plaintiff is the father of W. H. Lowe; the latter was, upon the 9th day of January, 1906, and for a long time prior thereto, employed by said defendant as an express messenger. His run was from Moline to Emporia and return; that each day, except Sunday, he arrived at Emporia, when the train was on time, at eleven A. M., and left Emporia for Moline at 3 : 40 P. M. It was his duty to assist at the office of the Wells, Fargo & Company Express at Emporia in doing the work connected with the running of said office; that a part of his duty was to receive packages from incoming trains and dispatch them on outgoing trains, if he could do so before leaving for his run. When packages were received by him that were to go out on trains that left after his train had departed, it was his duty to take such packages to the office and there leave the same with some employee of the company, and take such party's receipt for said package.

"That the duty of said Lowe in respect to said package was to follow instruction No. 551 of the rules of said defendant company, which is as follows: '551. Money and valuables from time of receipt until delivered must never be permitted to pass from the custody of one person to another without some form of written receipt or acknowledgment.'

"That said Lowe knew of said rule and had formerly complied therewith in handling money packages.

"Said Lowe also receipted the road messenger for all packages turned over to him by said messenger at Emporia; that on December 21, 1905, the Kansas Grain Company, of Hutchinson, delivered to this defendant an express package containing the sum of $406.84; said package was consigned to H. B. Gordon, at Oak Hill, Kan., Oak Hill being on what is commonly known as the Superior Branch of the Atchison, Topeka & Santa Fe Railway Company.

"Said package was delivered to W. H. Lowe by the road messenger at Emporia, on December 22, 1905, and receipted for by the said W. H. Lowe; said express package was never received by said consignee; that de-

fendant was compelled to, and did, pay the consignee the sum of $406.84 on February 6, 1906; that on January 19, 1906, H. B. Lowe paid to the defendant the sum of $406.84. The facts leading up to and including the payment of said money to the defendant by said H. B. Lowe are as follow:

"Said defendant demanded of said W. H. Lowe that he account for said package to them by paying them the sum of $406.84; that plaintiff, H. B. Lowe, after being informed of defendant's demand upon W. H. Lowe, went to Kansas City, and there had an interview with A. T. Payne, assistant superintendent of defendant; that said Payne demanded the payment of said sum of money by W. H. Lowe for the reason that said W. H. Lowe had failed to account to them for said package, and that he had receipted for the same; that at said conference, one James Van Buren, jr., manager of the United States Fidelity & Guaranty Company, was called into the conference, the last-named company having furnished a bond running to the defendant for the purpose of protecting it against any misconduct or neglect of duty of the said W. H. Lowe growing out of his employment with said defendant. The said James Van Buren, jr., at said conference, demanded that W. H. Lowe make payment of $406.84; that said H. B. Lowe requested said Payne and said Van Buren to go to Emporia, and make an investigation concerning the loss of said package. This they did, the said H. B. Lowe accompanying them to Emporia; that on the way to Emporia said Van Buren informed H. B. Lowe that it was evident that one of two men had the money. After they reached Emporia an investigation.was made, and the said Payne and Van Buren reported to this plaintiff and to W. H. Lowe that they had been unable to find out anything concerning the loss of said package, and demanded that the said W. H. Lowe pay to the defendant the sum of $406.84. This plaintiff, believing the fact to be that, after the said W. H. Lowe had received the package at Emporia, he had dropped the same before reaching the defendant's office at the depot in Emporia, and further believing that some one had picked the same up and carried it away, for the purpose of protecting the said W. H. Lowe's reputation and good name, he did, upon January 9, 1906, pay to the said defendant the sum of $406.84; that the follow-

ing receipt was given to this plaintiff at the time he paid said money:

"'EMPORIA, KAN., January 9, 1906.

"'Received of H. B. Lowe, the sum of four hundred six dollars and eighty-four cents ($406.84), settlement in full for package of currency of above amount, signed for by W. H. Lowe, on the 22d day of December, 1905, which we are unable to find further record of. It is hereby agreed that in case we find this package of money, or any part of it, the amount recovered is to be refunded to the said H. B. Lowe.

WELLS, FARGO & COMPANY EXPRESS,
By A. T. PAYNE, *Ass't Sup't.*

UNITED STATES FIDELITY & GUARANTY COMPANY,
By JAMES VAN BUREN, JR., *Manager.*'

"It was afterward learned that W. H. Lowe, upon receipt of said package, safely conveyed it to defendant's office at the depot in Emporia, Kan., and there placed it with other packages; that said W. H. Lowe did not take a receipt for the same; that at said time the holiday business was on hand, and that by reason thereof business was rushed and in a congested condition.

"That afterward it was learned that one George E. Davis, an employee of said defendant, and connected with its office at the depot at Emporia, was guilty of the theft of said package; he was afterward arrested at the instance of the defendant, admitted his guilt, and pleaded guilty to the charge against him of stealing said package, and was, on May 1, 1906, sentenced in the district court of Lyon county, Kansas, to the reformatory for said theft.

"That said George E. Davis claimed to have squandered the money so stolen; that the only thing of value that was ever recovered from said Davis was a watch with very little, if any, value; that said defendant company advised said Lowe of same on April 23, 1906, by letter in the following words:

"'The only thing of value we succeeded in getting from Mr. Davis is his watch, which is not worth much; but I still have it in my possession, and inasmuch as you put up the amount of the shortage, you might want to replevin the watch, and I simply call your attention to the fact so that you can take any such action, if you so desire.          Yours truly,
A. T. PAYNE, *Ass't Sup't.*'

"That said defendant has been and is ready to deliver said watch to plaintiff upon an order from Davis, or upon any legal order.

"That after Davis was arrested and admitted his guilt and entered a plea of guilty to the charge of having stolen said package, and after he had been sent to the reformatory for said theft, this plaintiff, through his attorney, I. E. Lambert, requested said defendant to return to him the $406.84, claiming the same had been paid under a mistake of facts, and a misapprehension of what the facts were as to the disappearance of the said express package from defendant's office.

"That said Payne informed said I. E. Lambert that he would take up the matter with his superintendent, and afterward declined to pay the same, claiming that by reason of his gross carelessness and negligence said W. H. Lowe had become and was indebted to said defendant company for said package and sum, and that said payment had been made by plaintiff voluntarily for and on behalf of W. H. Lowe.

"That on June 22, 1906, this plaintiff brought suit to recover the said sum of $406.84.

"That said George E. Davis was at the time of said theft, and for a long time prior thereto and up to the time he left the service of the defendant, under a bond issued by the United States Fidelity & Guaranty Company, running to the defendant; that said bond was for the faithful service and the performance of all duties growing out of his said employment by said defendant."

*I. E. Lambert,* and *Humbert Riddle,* for plaintiff in error.

*W. N. Smelser, J. Jay Buck,* and *S. S. Spencer,* for defendant in error.

The opinion of the court was delivered by

SMITH, J.: The facts being agreed upon and in writing, this court is in the same position to weigh and interpret them as was the court below. Whether the money was paid under a mistake of fact is practically conceded to be the controlling question.

To entitle the plaintiff to recover, we shall assume,

in accordance with the contention of the defendant, that the mistake must have been at the time of the payment mutual, and the alleged mistaken fact material. What, then, was the situation at the time of the payment? The money had been lost. Diligent efforts were made by both parties to discover what became of it, which resulted in tracing it to the hands of the plaintiff's son. He could not account for it, and no further trace of it could be found. Before reaching Emporia, where an investigation was made by defendant's representative and another man who accompanied him, the plaintiff was informed "that it was evident that one of two men had the money." After making the investigation they informed the plaintiff and his son "that they were unable to find out anything concerning the loss" and demanded payment of the amount lost from the plaintiff's son. Then the plaintiff, according to the agreed statement of facts, "believing the fact to be that, after said W. H. Lowe had received the package at Emporia, he had dropped the same before reaching the defendant's office at the depot in Emporia, and further believing that some one had picked the same up and carried it away," paid the amount of the loss to the defendant.

When the defendant's agent under these circumstances demanded payment of the loss from the plaintiff's son and received the payment from the plaintiff we think the defendant should not be heard to say that it did not believe that the plaintiff's son had lost or appropriated the money. Both parties, then, believed a material fact to exist which did not exist, and which alone led to the payment of the money.

That another stole the money after the plaintiff's son had "safely conveyed it to defendant's office at the depot in Emporia, Kan., and there placed it with other packages," is not material except to show the mistake by reason of which the plaintiff paid the money. There is no recital in the statement of facts, and there is no presumption, that the failure of W. H. Lowe to take a

receipt for the package induced Davis to steal the package. It is true the rule of the company required W. H. Lowe to take a receipt for each article of express which came into his possession as agent of the defendant when he parted with such possession. His failure to do so was negligence, and for such negligence he was responsible to the company for such damages as could be reasonably anticipated to flow therefrom. We can not say, however, that when he safely deposited the package in the defendant's office with other packages, presumably of like character, it was reasonably to be anticipated that some other employee of the company would steal the package. If not, there was no consideration for the payment. The theft was the proximate and independent cause of the loss; the negligence was not. The payment was made and received under the belief that W. H. Lowe, and not another, had lost or appropriated the package.

The defendant bases its defense practically upon the proposition "that the money was lost, and lost by reason of the carelessness and neglect of duty on the part of W. H. Lowe." We do not think this conclusion follows from the facts.

There is much discussion and citation of authorities in the briefs as to what must be the nature of the mistake of fact to entitle a party to recover. A succinct definition, which we think correct, is given in volume 27 of the Cyclopedia of Law and Procedure, at page 809:

"A mistake which takes place when some fact which really exists is unknown, or some fact is supposed to exist which really does not exist; one not caused by the neglect of a legal duty on the part of the person making the mistake; an unconscious ignorance or forgetfulness of a fact past or present material to the contract; a mistake not caused by the neglect of a legal duty on the part of the person making the mistake and consisting in an unconscious ignorance or forgetfulness of a fact past or present material to the contract or belief in the present existence of a thing material to the con-

tract which does not exist or in the past existence of a thing which has not existed."

It is a general rule that money paid under a mistake of fact, where the party seeking to recover was not intentionally ignorant nor grossly negligent in failing to discover the facts, can be recovered. Money paid by an express company on a claim for the loss of goods, under the mistaken belief that it had received them for shipment, may be recovered. (*J. S. Hulse Hardware Co. v. American Express Co.*, 65 Ill. App. 596.) Plaintiff's recovery of a bank-book could not be defeated on the principle of voluntary payment where, her son having accidentally set fire to defendant's property, she transferred the book to the defendant, not willingly, but because of some supposed legal liability on account of the son's act, defendant having no right or pretense of right, but merely having asked plaintiff if she could not make him some recompense for the loss, and having asked her to sign a writing transferring the book. (*Bishop v. Corning,* 37 N. Y. Supr. Ct., App. Div., 345, 57 N. Y. Supp. 697.)

"Money paid under a mistake of fact may be recovered. The fact that the person making the payment has the means of knowledge at hand and overlooks the same by an inadvertence is immaterial if the party receiving the same is not entitled to it." *(Girard Trust Co. v. Harrington, Appellant,* 23 Pa. Super. Ct. 615, syllabus.)

(See, also, *City of Covington v. Powell,* 59 Ky. 266; *City of Louisville v. Henning & Speed,* 64 Ky. 381; *Pearson v. Lord,* 6 Mass. \*82; *Lazell v. Miller,* 15 Mass. 207; *Guild v. Baldridge,* 32 Tenn. 295; *Scott v. Ford,* 45 Ore. 531, 78 Pac. 742, 80 Pac. 899, 68 L. R. A. 469.)

It is contended that the payment in question was a voluntary one and can not be recovered, and among other authorities cited to support this proposition are the following: *Phillips v. Jefferson Co.,* 5 Kan. 412, *Wabaunsee Co. v. Walker,* 8 Kan. 431, *Irwin v. Thomas,* 12 Kan. 93, *K. P. Rly. Co. v. Comm'rs of*

Lowe v. Wells.

*Wyandotte Co.*, 16 Kan. 587, *Sapp v. Comm'rs of Brown Co.*, 20 Kan. 243, and *Thimes v. Stumpff*, 33 Kan. 53, 5 Pac. 431. We have examined all these cases and find that they are really authorities against the proposition contended for. The decisions in each case are based upon the proposition that the plaintiff with full knowledge of the facts voluntarily made the payment.

In the case at bar the plaintiff made every reasonable effort to ascertain what became of the lost package of money, without success. The facts which came to his knowledge from investigation evidently led him to believe, and he paid the money believing, that his son had lost the package by dropping it. This was not true. It was lost by being stolen by another employee from a place in the defendant's office where the plaintiff's son had safely deposited it. This we think is a clear mistake of fact. A fact was believed to exist which did not exist, and a fact existed which was not known; otherwise the money would not have been paid, it is safe to infer. Under the real facts neither the plaintiff nor his son were under a duty to pay the loss, and the defendant had no right to retain the money after it was paid. The company was indemnified against loss from the misfeasance of Davis as well as of young Lowe.

It is contended that the language incorporated with the receipt which the defendant executed and delivered to the plaintiff became a contract when accepted, and determined the conditions only upon the occurrence of which the defendant was bound to return the money or any part thereof. Some courts hold that equity refuses to enforce contracts made under a mistake of fact against one injured thereby, where no wrong is done to the other party. The repayment of the money puts the defendant in the same position that it was in before payment.

The judgment is reversed and the case is remanded, with instructions to render judgment for the plaintiff.