No. 47,247

HOMER D. CAMPBELL, GALE D. SQUIER, and CAMPBELL ABSTRACT AND INSURANCE CO., INC., *Appellees,* v. LOYD W. FOWLER, JR. and PATSY JUNE FOWLER, *Appellants.*

(520 P. 2d 1285)

Opinion filed April 6, 1974.

*Van Smith,* of Garden City, argued the cause, and *Lelyn J. Braun,* of Garden City, was with him on the brief for the appellants.

*Ray H. Calihan, Jr.,* of Garden City, argued the cause, and was on the brief for the appellees.

The opinion of the court was delivered by

PRAGER, J.: This is an action brought by the plaintiffs-appellees, Homer D. Campbell, Gale D. Squier, and Campbell Abstract and Insurance Company, Inc. for the recovery of a real estate commission in the amount of $9,755 from the defendants-appellants, Loyd W. Fowler, Jr. and Patsy June Fowler. Plaintiffs claim they earned a commission by finding a buyer for the defendants' real estate located in Finney County, Kansas. The facts are not greatly in dispute and are as follows: Plaintiffs are licensed real estate brokers in Garden City, Kansas. In February of 1970 they mailed to the defendants Fowler a solicitation for a real estate listing for the sale of the Fowlers' property. The Fowlers lived in Glenwood Springs, Colorado. The title to the real estate was in the name of Mrs. Fowler. After February 18, 1970, the plaintiffs and the defendant, Loyd W. Fowler, Jr. had correspondence concerning the listing of

the land for sale. In fact all of the dealings between the brokers and the Fowlers were either by mail or telephone. Copies of this correspondence were admitted into evidence as exhibits in the case. The plaintiffs sought to obtain an exclusive listing for the sale of the property and sent Mr. Fowler a written contract to that effect which he did not sign. The parties have stipulated that the correspondence between the parties constituted a real estate listing agreement between them for the sale of Fowlers' real estate. The terms for sale were not rigidly fixed by the Fowlers. The Fowlers suggested a purchase price of $275,000 of which the purchaser would assume a Federal Land Bank Loan in the amount of approximately $103,000, 29% of the total purchase price was to be paid as a down payment, and the balance could be paid by installments. Terms as to the rights of the present tenant were left open. It was agreed that the real estate commission should be five percent of the total sale price. The Fowlers agreed to consider any counter-offer which might be made by a reliable buyer. Thereafter the plaintiffs reported that they had shown the defendants' land to prospective purchasers.

On October 26, 1970, the plaintiffs wrote a letter to Mr. Fowler enclosing an unsigned proposed contract dated October 23, 1970, for the purchase of the land by one B. F. Cornett for the sum of $192,000. This contract provided for the payment of the sum of $35,000 on or before December 1, 1970. *By its specific provision time was made of the essence of the contract.* The contract provided that the purchase was subject to the sale of Cornett's Knox County, Texas, land which was currently being sold under contract and would be completed *prior* to final settlement and that if the buyer's land was not sold, then the offer was to become null and void and the down payment refunded to the purchaser. This contract was rejected by the Fowlers and was never signed by either party.

On October 31, 1970, the plaintiffs submitted to the Fowlers a second proposed written contract dated October 31, 1970. This contract increased the purchase price to $196,967.94 and provided for a down payment of $5,000 earnest money and a payment of $35,000 on or before November 15, 1970. *This contract also contained a specific provision that time is of the essence of this contract and stated that the transaction should be consummated on or before November 15, 1970.* The contract also contained the provision that

the offer was subject to the sale of the buyer's Knox County, Texas, land and that such sale was to be completed prior to the closing of this sale. Mr. Fowler did not accept the contract as written but instead inserted an additional clause in the contract giving the tenant, Glenn Stover, the right to enter upon the land to farm and harvest wheat. Mr. Cornett had signed the written contract prior to the time it was submitted to the Fowlers. Mr. Fowler signed it only after adding the new provision just discussed. Mr. Cornett refused to accept the changes inserted in the contract by Mr. Fowler and the agreement was never consummated.

On November 9, 1970, the plaintiffs prepared and mailed to the Fowlers a third proposed real estate contract dated November 9, 1970, for the purchase of the real estate by B. F. Cornet for the amount of $195,117.94. Enclosed with the proposed contract were a general warranty deed and a payment authorization form. This proposed contract specifically provided for the payment of $35,000 on or before November 15, 1970, and that the transaction shall be consummated on or before November 15, 1970. *It specifically stated that time is of the essence of this contract.* This offer was also stated to be subject to the sale of the buyer's Knox County, Texas, land. Mr. and Mrs. Fowler signed the contract together with the general warranty deed and payment authorization form and mailed them to their attorney, Dale H. Corley, on or about November 17, 1970. It is important to note that this contract form was never delivered to the plaintiffs nor to the proposed purchaser B. F. Cornett. This document contained the Fowlers' signatures but was never signed by B. F. Cornett.

The undisputed evidence showed that the Fowlers instructed Mr. Corley to review the contract and to revise the same, in particular with respect to the closing date. Mr. Corley then proceeded to prepare a new contract of sale dated November 25, 1970, for the purchase of the real estate by B. F. Cornett for the previously agreed figure of $195,117.94, together with a promissory note, a real estate mortgage, and a receipt and release form. These papers along with other papers were mailed by Mr. Corley to the Fowlers for execution on November 25, 1970. They were signed by the Fowlers and were returned to Mr. Corley on or about November 27, 1970. The specific provisions of this proposed contract should be noted. The sum of $5,000 in cash as earnest money was to be paid forthwith and an additional sum of $35,220.50 was to be paid

on or before December 1, 1970. The date for the closing of the contract was stated to be December 1, 1970. The proposed contract further provided that in the event the defendant should fail to pay the balance of the purchase price due on December 1, 1970, upon the closing of this transaction, the sellers may at their option cancel the agreement and the earnest money is to be forfeited as liquidated damages. *As in the case of the other proposed contracts this contract specifically provided that "time is of the essence of this transaction."* The evidence was undisputed that this contract was dictated by Mr. Corley in his office in the presence of one of the plaintiffs, Gale D. Squier, after the December 1 closing date was fully discussed.

After the proposed contract dated November 25, 1970, had been signed and returned to Mr. Corley by the Fowlers, Mr. Corley was advised by plaintiff, Gale D. Squier, that Cornett could not perform the contract on December 1, 1970. Mr. Corley stated that he did not know how long the Fowlers would wait for their money. On December 4, 1970, Mr. Fowler sent the plaintiffs a telegram stating as follows:

"Due to December 1 closing date past I hereby withdraw my offer on Finney County Kansas land."

On December 11, 1970, the plaintiffs notified Mr. Corley by telephone that B. F. Cornett had called them and advised them that money would be available from the sale of his Texas land on December 17, 1970, and he would be ready to close the November 25 contract at that time. Plaintiffs offered to advance $5,000 on the purchase price on behalf of Mr. Cornett if desired by the defendants prior to December 17, 1970. Plaintiffs at that time were advised by Mr. Corley that the Fowlers had sold their real estate to a third party. The evidence was undisputed that Mr. Cornett did not have funds available to make the $35,000 payment required under all of the proposed contracts until December 11, 1970.

There was evidence to show that in the early or middle part of November 1970, the Fowlers were contacted by another real estate broker, Mr. Atherton, concerning the sale of this land. According to Fowler he told Atherton that the land was for sale and there was no definite contract on it because they had not come to a meeting of the minds in all aspects of it yet. Mr. Atherton negotiated a sale of the land to another buyer for the sum of $197,500.

The case was tried to the court sitting without a jury. The trial

court entered judgment in favor of the plaintiffs allowing them a broker's commission in the amount of $9,755 plus interest or a total judgment of $11,057.51. The trial court found that the plaintiffs were employed by the defendants as real estate brokers; that throughout the transaction Mr. Fowler was acting on behalf of himself and as agent of his wife, Patsy June; and that the plaintiffs had found a buyer who was ready, willing and able to buy the property upon terms and conditions satisfactory to the defendants. In addition the trial court made the following specific findings of fact:

"4. If total closing and consummation of the transaction between defendants and the buyer, B. F. Cornett, by December 1, 1970, was ever a condition of their agreement, such condition was imposed by defendants after a ready, willing and able buyer had been found by plaintiffs.

"5. Defendants tried to keep open the option, right at the end of this transaction, of turning it down by drawing papers that seemed to call for a December 1 closing date but which do not actually clearly indicate that closing by December 1, was an absolute requirement, in order that they could take their choice of the particular deals available to them.

"6. Plaintiffs earned the commission in the amount stated in the prayer of the Petition and, as a matter of law, having found a buyer ready, willing and able to buy the property under the conditions that were satisfactory to the defendants, plaintiffs are entitled to recover their full commission. It was not required that plaintiffs finally consummate the transaction with the new terms which were imposed."

The Fowlers have appealed to this court.

The primary issue to be determined on this appeal is whether or not under the evidence presented in this case the plaintiffs as brokers found a buyer who was ready, willing and able to buy the property upon terms and conditions satisfactory to the defendants as owners of the real estate. The evidence is undisputed that the defendants employed the plaintiffs as brokers to procure a buyer for their land for a price and upon terms acceptable to the defendants. The listing was not exclusive. For such service the defendants agreed to pay the plaintiffs a real estate commission of five percent. The plaintiffs contend that B. F. Cornett was a buyer procured by the plaintiffs who was ready, willing and able to purchase the Fowlers land for a price and upon terms acceptable to the defendants. They contend that the buyer and the sellers had a meeting of the minds and that a binding and enforceable contract was made between buyer and sellers. Plaintiffs take the position that a fixed closing date of either November 15 or December 1, 1970, was not

contemplated by the parties nor a firm obligation of the buyer under the contract. They contend that the agreement was conditional only upon the sale by Mr. Cornett of his Knox County, Texas, land and that when the Texas land was sold Mr. Cornett would be bound to make the payments under his agreement and not before.

The defendants, Mr. and Mrs. Fowler, contend that there was never a meeting of the minds between them and B. F. Cornett; that there was never a consummated contract signed by the buyer and sellers; that there were merely exchanges of offers and counteroffers which were never accepted. They specifically urge that a closing date of either November 15 or December 1, 1970, was made an essential term in each and every proposed contract; that they were ready, willing and able to close a contract on that basis; and that the plaintiffs failed to produce a buyer who agreed or was able to comply with their terms.

We believe that this case must be determined on the basis of whether or not B. F. Cornett, as prospective buyer, and Mr. and Mrs. Fowler, as prospective sellers, ever had a meeting of the minds on terms satisfactory to both parties. It is clear from the evidence that the buyer and sellers were in agreement as to the purchase price to be paid and the general method for the payment thereof in installments. The point of contention is whether or not Mr. Cornett and the Fowlers agreed on a fixed closing date for the transaction. We have concluded that under the undisputed evidence in this case a closing date of December 1, 1970, was one of the fixed terms required by the sellers, Mr. and Mrs. Fowler, before they would enter into a contract of sale with Mr. Cornett. We further hold that there is no substantial competent evidence in the case to support the findings of the trial court to the contrary. We have reached this conclusion because of evidence which stands uncontradicted. In the first place in each and every proposed written contract submitted by either the brokers or by Mr. Corley there is an express provision for the payment of $35,000 by the buyer on or before either November 15 or December 1, 1970. Every one of the proposed contracts specifically provided that *time is of the essence of the contract*. A provision in a contract for the sale of real estate making the time of payment of the purchase price of the essence of the contract is to be respected and enforced by the courts like any other stipulation between the

parties. (*Peterson v. Davis,* 63 Kan. 672, 66 Pac. 623.) The provisions of a written contract requiring payments on a fixed date and providing that time is of the essence of the contract must be given the effect stated in their contract and that they had the intention which its terms import. (*Schnug v. Schnug,* 203 Kan. 380, 454 P. 2d 474.) It is not the function of courts to make contracts, but to enforce them as made (*Springer v. Litsey,* 185 Kan. 531, 345 P. 2d 669); nor is it within the province of a court to reform an instrument by rejecting words of clear and definite meaning and substituting others therefor. (*Drilling, Inc. v. Warren,* 185 Kan. 29, 340 P. 2d 919.) It is true that where a written contract provides that time is of the essence a vendor of real property may by his own actions waive his right to enforce such a provision. (*Gustason v. DeHaven,* 134 Kan. 324, 5 P. 2d 1095.) Furthermore such a provision may be nullified where mutual mistake or fraud is established. In this case there is no evidence nor is there a claim that the express provisions of the written contract have been waived by the defendants. Likewise there is no evidence of mutual mistake or fraud. We find no basis for the trial court's finding that the specifically stated closing date and time for payment was not one of the essential terms required by the sellers.

It must be emphasized here that the brokers themselves prepared and sent to the Fowlers the three proposed contracts dated October 23, October 31 and November 9, 1970. It was the plaintiffs who provided the contractual provisions that the transaction was to be consummated on or before November 15, 1970, and that time was of the essence of the contract. The law simply cannot permit a broker to submit a contract so providing to his principal and then permit the broker to take the position that the written contract does not mean what it expressly states. This is especially true where the broker and his principal have not had the opportunity to discuss the matter face-to-face and all of the conversations between them have been either by correspondence or telephone. Furthermore as we read the record the testimony of all of the witnesses was to the effect that the Fowlers were two years in default on their mortgage payments, that there was a danger of foreclosure of the mortgage, and that the Fowlers urgently needed money, which necessitated the sale being closed as soon as possible. This was the testimony of Mr. Fowler, Mr. Corley and that of the plaintiff, Gale D. Squier. Mr. Squier testified that in the pro-

posed October 23 contract the closing date was set at November 15 and that a closing date was specifically discussed with respect to each one of the contracts. The evidence is undisputed that the proposed buyer, B. F. Cornett, never had the sum of $35,000 available to make a payment either on November 15, 1970, or December 1, 1970, and that he did not have the money until December 11, 1970.

On the basis of the evidence before us here we think it clear that the parties did not have a meeting of the minds. Obviously B. F. Cornett was never in a position where he could comply with the provision of any of the proposed contracts to pay the sum of $35,000 on either November 15 or December 1, 1970. If he ever did agree to such a provision then he fails to meet the legal standard of a "ready, willing and able" buyer because he did not have either cash in hand nor was he able to command the necessary funds to complete the purchase within the time fixed for performance. (*Winkelman v. Allen,* 214 Kan. 22, 519 P. 2d 1377.)

For the reasons set forth above the judgment of the district court is reversed and judgment is entered in favor of the defendants-appellants.

FROMME, J., not participating.