(638 P.2d 954)
No. 52,399

CONTINENTAL OIL COMPANY, *Appellant,* v. IDEAL TRUCK LINES, INC., *Appellee.*

Petition for review denied March 3, 1982.

Opinion filed December 31, 1981.

R. *Douglas Sebelius,* of Sebelius Law Office, of Norton, for the appellant.

*Bruce W. Kent,* of Ryan, Kent, Wichman, Walter and McClymont, Chartered, of Hays, for the appellee.

Before JUSTICE HERD, presiding, SWINEHART, J., and LEWIS L. McLAUGHLIN, District Judge Retired, assigned.

HERD, J.: This is an appeal by Continental Oil Company (Conoco) from a judgment in favor of Ideal Truck Lines, Incorporated, holding Ideal did not owe Conoco $22,782.04 in federal excise taxes paid for Ideal by Conoco.

The facts are for the most part uncontroverted. Conoco is a major oil corporation operating out of Ponca City, Oklahoma. Ideal is a common carrier truck line operating out of Norton, Kansas. Ideal had been a direct retail sale consumer of diesel fuel from Conoco for a number of years. The time frame involved in this appeal is 1974 to 1978. In June 1974 the parties executed the following document:

"Ideal Truck Lines, Inc.        June 19, 1974
P.O. Box 330
Norton, Kansas 67654      3520 West 75th Street
                            Prairie Village, Kansas
                                  66208

We are pleased to quote you as follows, subject to the conditions on the reverse side of this form and your acceptance within _____ days after the above date.

| Quantity | Conoco Product | Type of Delivery and/or Package Size | Price | F.O.B. |
|---|---|---|---|---|
| 187,000 gal. | CONOCO #2 Diesel Fuel | Transport | 26.35¢/Gal. | Norton, Kansas |

The volumes set out below are the maximum monthly quantities and are subject to change at any time in accordance with Continental's product allocation program. Any product not taken during the month specified will be deleted from the total allocation and will not be delivered at a later date.

| | | | |
|---|---|---|---|
| July 1974 | 38,500 gal. | October 1974 | 39,500 gal. |
| August 1974 | 39,500 gal. | November 1974 | 34,500 gal. |
| September 1974 | 36,500 gal. | December 1974 | 32,500 gal. |

Delivery Period: From July 1, 1974 to December 31, 1974

Price Escalation: Price will escalate with CONOCO's normal consumer basing value price for CONOCO No. 2 Diesel Fuel which is 25.61¢/gal. on June 19, 1974.

Taxes: Unless otherwise stated herein, all prices are exclusive of taxes and such prices will be increased to the extent of any applicable tax or governmental charge now or hereafter imposed.

Shipment: Per above schedule

Terms of Payment: NET, 30 days.

If this offer is acceptable to you, please sign and return duplicate copy.

Accepted June 21, 1974

                                   Continental Oil Company
Ideal Truck Lines, Inc., Buyer     (Conoco)
                                   By /s/ J. S. Bergin
                                   Division Product Pricing
By /s/ Lester W. Long         Assistant"

Conoco delivered diesel fuel to Ideal pursuant to the foregoing document, billing Ideal for the fuel plus federal tax on an invoice with a two line description: "Conoco No. 2 Diesel Fuel . . . Fed Tax . . . ."

Commencing January 1, 1974, and continuing through 1975, 1976, 1977 and 1978 Ideal sent letters authorizing Conoco to collect four cents per gallon excise tax on all diesel fuel it sold Ideal. The letters were written in the following form:

"January 1, 1974
Continental Oil Company
Drawer 471
Ponca City, Oklahoma
Gentlemen:
Please consider this letter your authorization to charge us the federal excise tax of 4 cents per gallon on all diesel and other special motor fuels purchased for highway use. This fuel will be delivered into storage facilities properly marked "tax paid fuel—for highway use" at the following location(s):

> 912 North State
> Norton, Kansas 67654

In the event diesel or other special motor fuels are also purchased for non-highway use, separate storage facilities properly marked for non-highway use will be maintained for this fuel. If special fuel(s) delivered into storage facilities for non-highway use is subsequently used over the highway, we will report and pay the applicable federal excise tax directly to the Internal Revenue Service.
Yours very truly,
/s/ Fred L. Gilhousen
Ideal Truck Lines, Inc.
Norton, Kansas."

Conoco complied with Ideal's request for the year 1974 and until July 15, 1975. Thereafter until June 1978 Conoco failed to bill and collect the excise taxes from Ideal. Its statement rendered July 15, 1975, had a one line description: "Conoco No. 2 Diesel Fuel . . . $2,301.17." This invoice was totaled out at $2,301.17.

Ideal paid Conoco the amount it was billed for. The excise taxes on diesel fuel sold to Ideal from July 15, 1975, to May 18, 1978, were neither collected nor paid by Conoco. Ideal assumed the taxes were included in the billing. Conoco sent Ideal price quotations from time to time on a printed quotation form which stated on the last line: "Prices in cents per gallon excluding Federal, State, and Local taxes."

In June 1978, Conoco discovered it had failed to collect and pay Ideal's excise tax for the three-year period amounting to $22,782.04. Upon this discovery, Conoco immediately made payment for the amount owed to the Internal Revenue Service and sent Ideal a statement on June 19, 1978, for reimbursement.

Ideal refused to reimburse Conoco for the taxes and this suit followed. The trial court found for Ideal on the theory there was no contract between the parties and since the mistake was unilateral uncoupled with fraud or undue influence a court of equity could not grant relief. This appeal followed.

For its first issue Conoco maintains that the invoices and letters

constitute an agreement for the sale of diesel fuel and obligate Ideal to pay Conoco for the fuel plus four cents per gallon excise tax. Ideal denies a contract existed. Let us first examine the applicable statutes. K.S.A. 84-2-101 *et seq.* governs sales transactions such as this. K.S.A. 84-2-204 provides:

"(1) A contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract.

"(2) An agreement sufficient to constitute a contract for sale may be found even though the moment of its making is undetermined.

"(3) Even though one or more terms are left open a contract for sale does not fail for indefiniteness if the parties have intended to make a contract and there is a reasonably certain basis for giving an appropriate remedy."

The trial court's finding there was no contract is not supported by the evidence. Here the parties executed a written document dated June 19, 1974, providing for the sale of diesel fuel to Ideal. The agreement established the price and the maximum quantity of diesel fuel allocated to Ideal. It also quoted a current price and provided "[p]rice will escalate with CONOCO's normal consumer basing value price for CONOCO No. 2 Diesel fuel which is 25.61¢/gal. on June 19, 1974." It also provides a delivery period, place of delivery, terms and shipment schedule and states that unless otherwise stated all prices are exclusive of taxes. We hold the instrument is a valid contract between the parties. Thereafter the parties continued a course of dealing similar to that contracted for in 1974. Conoco would quote Ideal a price on No. 1 and No. 2 diesel fuel and Ideal would order what it needed at the quoted price for delivery in Norton. Conoco would then bill Ideal for the fuel and, as a separate item on the statement, for the excise taxes as authorized by its letters. We hold there was a valid contract entered into obligating Conoco to collect and pay the excise taxes on the fuel sold to Ideal. In consideration for Conoco's obligation Ideal agreed to reimburse Conoco for the taxes.

The course of dealing continued on those terms until July 15, 1975, when Conoco mistakenly failed to bill Ideal for the taxes. Ideal paid the statements as submitted, never calling to Conoco's attention the omission of the taxes. Ideal maintains it was unaware of the omission and misled by Conoco's mistake. Let us review the history of the transactions between the parties. The original contract stated, "unless otherwise stated herein, all prices are exclusive of taxes . . . ." The statements rendered there-

under by Conoco contained a separate line item for taxes. The price quotations from Conoco to Ideal stated they excluded taxes. The price of fuel recited in the pertinent billing statements from Conoco coincided with the price quotations previously made from which Ideal ordered its fuel. And finally, the billing statements did not contain a separate line item for taxes. The foregoing evidence is uncontroverted. It is also sufficient to place a reasonably prudent person on notice the taxes were not included in the billing statements. In spite of this, Ideal argues it is not responsible for its taxes since it assumed they were included in the billings. Ideal cannot hide behind its failure to read the statements. It is a cardinal rule of evidence a person is presumed to have seen what he could have seen had he looked. See *Horton v. Atchison T. & S. F. Rly. Co.*, 161 Kan. 403, Syl. ¶ 8, 168 P.2d 928 (1946). We hold Ideal knew or should have known its excise taxes were not being collected by Conoco. Ideal stood by permitting the oversight to continue. That was a mistake. The taxes are Ideal's obligation. Conoco's duty arose from the request by Ideal.

These facts do not support the trial court's finding of a unilateral mistake on the part of Conoco. Instead the evidence clearly points to a mutual mistake of the parties in the performance of their obligations under the contract. Kansas law allows equitable relief upon a showing of mutual mistake. *Campbell v. Fowler,* 214 Kan. 491, 497, 520 P.2d 1285 (1974); *Snider v. Marple,* 168 Kan. 459, 465, 213 P.2d 984 (1950); *Green v. Insurance Co.,* 112 Kan. 50, 53, 209 Pac. 670 (1922).

The issue here is whether restitution may be granted an aggrieved party where there is a mutual mistake in performance of a contract. The equitable principle of *Nemo debet locupletari aliena jactura*—no one should be unjustly enriched at the expense of another—is applicable. Restitution is based on justice, morals, equity and good conscience rather than contract or statute. 66 Am. Jur. 2d, Restitution & Implied Contracts § 4, p. 946. Restatement of Restitution § 1 (1937), makes this observation: "A person who has been unjustly enriched at the expense of another is required to make restitution to the other." At common law the term "restitution" was used to describe the return or restoration of a specific thing or circumstance. It is now expanded to mean a general duty to do justice.

Kansas recognizes the general rule that restitution is a theory of recovery by an injured party. See *Holloway v. Water Co.,* 100 Kan. 414, 167 Pac. 265 (1917); *Osincup v. Henthorn,* 89 Kan. 58, 130 Pac. 652 (1913); *Lowe v. Wells,* 78 Kan. 105, 96 Pac. 74 (1908).

Further, once jurisdiction of the subject matter has been established, the court will take into consideration all matters before it to fully adjust the rights and equities of the parties. *Place v. Place,* 207 Kan. 734, 486 P.2d 1354 (1971); *Koerner v. Custom Components, Inc.,* 4 Kan. App. 2d 113, 603 P.2d 628 (1979); *Schaefer & Associates v. Schirmer,* 3 Kan. App. 2d 114, 590 P.2d 1087 (1979).

The general rule in equity regarding mistakes is summarized in 5 Williston on Contracts § 1574 (rev. ed. 1937), as follows:

"One who by error in computation, or by mistake of any fact, pays a real or supposed creditor more than his due, or pays a debt previously discharged, may recover the over-payment; and generally speaking, money paid over under a mutual mistake of an essential fact, or under an unilateral mistake as to such a fact where the defendant has parted with nothing and the plaintiff has not received an expected return, may be recovered . . . ."

The case at bar involved the satisfaction by Conoco of a duty imposed on Ideal by statute. Under the law, a party who has discharged the obligation of another or who has performed beneficial services at another's request is afforded a remedy to the extent of the benefit to the other party. Restatement of Restitution § 1 (1937) states:

"A person confers a benefit upon another if he gives to the other possession of or some other interest in money, land, chattels, or choses in action, performs services beneficial to or at the request of the other, satisfies a debt or a duty of the other, or in any way adds to the other's security or advantage. He confers a benefit not only where he adds to the property of another, but also where he saves the other from expense or loss. The word 'benefit,' therefore, denotes any form of advantage." Comment *b,* p. 12.

Kansas has no case law squarely in point but other jurisdictions have dealt with the issue. In *Gulf Oil Corporation v. Lone Star Producing Co.,* 322 F.2d 28 (5th Cir. 1963), Gulf contracted to purchase crude oil from Lone Star at a price of $3.15 per barrel less a cost in excess of five cents per barrel for pipeline tariffs to one of Gulf's stations. For thirty-one months Gulf paid Lone Star $3.15 per barrel, but failed to deduct the pipeline tariff amounting to fifteen cents per barrel. Upon discovering the error Gulf

requested reimbursement from Lone Star of the overpayment of $44,522.33. The court held Gulf entitled to recover stating, "The fact that the payor was negligent, or was carelessly ignorant of the facts as to which he was mistaken does not necessarily bar recovery, but may be considered in determining the equities between the parties . . . ." p. 31.

In *Bradshaw v. Kinnaird,* 319 S.W.2d 475 (Ky. App. 1958), both parties participated in the mistake. There plaintiff purchased a farm containing a 9.2 acre tobacco base. Both parties believed the government-allotted base for plaintiff's farm to be 14.3 acres. In rejecting rescission, the court held restitution to plaintiff must be granted to provide him with an adequate remedy: "To leave plaintiff without remedy would not only be unjust to him but would also result in a windfall to defendants." p. 477.

In *International Harvester Cr. Corp. v. East Coast Truck,* 387 F. Supp. 820, 827 (S.D. Fla. 1974), the court used its equity powers to dissolve a contract between the parties stating: "It has often been said that a court of equity is a court of conscience which should not be shackled by rigid rules of procedure."

Conoco paid taxes for Ideal, conferring a $22,782.04 benefit which Ideal refused to reimburse. Ideal was thereby unjustly enriched. Conoco is entitled to restitution in the amount of the benefit conferred.

The judgment of the trial court is reversed and judgment entered for the appellant, with prepayment interest at the legal rate from June 1978.

SWINEHART, J., dissenting. The majority has missed the important points that were clearly and convincingly shown by the undisputed evidence and exhibits presented at trial.

The alleged contract, marked plaintiff's Exhibit No. 2, appears both on its face and by testimony presented at trial to be nothing more than a statement by plaintiff to defendant that for the remainder of 1974, commencing June 19, 1974, plaintiff would sell to defendant fuel oil in a quantity not to exceed specified gallons per month. If a lesser amount was purchased by defendant, the balance not purchased would not be available the next month or in subsequent months. The price of the fuel oil on that date was based on a specific, set amount per gallon, and the price would fluctuate during the time period involved as was permitted

by law. The document also provided that defendant would be billed by plaintiff for the fuel oil delivered and that there would be added thereto any sum of money paid by plaintiff in the nature of taxes for the benefit of defendant.

First, it is clear under any broad or reasonably liberal interpretation that by signing this document, defendant was not obligated to purchase fuel oil from plaintiff. At most, defendant, if he did choose to purchase, would be limited to the gallonages set forth in the document for an unknown price, plus any taxes paid by plaintiff for defendant's benefit on the purchase.

The record reflects that defendant purchased fuel oil from plaintiff and was originally billed both for the fuel oil and the taxes. These billings were made on plaintiff's blank invoice forms and continued to be made on the forms for the period of the relationship of seller and purchaser. The record further sustains the fact that defendant faithfully paid to plaintiff the charges as billed on each and every purchase. These individual sales of fuel oil continued over a period of several years. The record further reveals that each year, during this period of time, defendant gave written authorization to plaintiff to pay to the federal government the excise taxes on the fuel oil, which by law was defendant's obligation to pay.

It was only as the result of plaintiff's unilateral actions that in its billings to defendant, for whatever reason, it discontinued its practice of itemizing the charges here involved, *i.e.,* (1) the number of gallons of fuel oil delivered, the price per gallon and the total sum thereof, (2) the percentage of excise taxes paid and the gallons delivered and the total sum, and (3) the total amount due which would be the sum of these items.

For a period of approximately six months, June 19, 1974, to January 3, 1975, the above procedure was regularly followed, as the following representation of the invoices discloses:

CONOCO                                                    Invoice

CONTINENTAL OIL COMPANY
Remit to:
BOX 947
KANSAS CITY, MISSOURI
64141

Sold IDEAL TRUCK LINES                    Invoice No. 183864
to                                        Invoice date 01-03-75
   NORTON KS 67654   24134645 00          Terms NET 30

| Shipped to and Destination NORTON KANSAS | Contract | F.O.B. Dest. ✿ Origin | Prepaid ✿ Collect |
|---|---|---|---|

| Date Shipped | How Shipped | Cust.Order | Our Order No. | GOSI or Tfr. | Car or B/L No. |
|---|---|---|---|---|---|
| 12-30 | CONOCO | | | 0988 | 1517 |

| Description | Gross Gallons or Units | Net Gallons | Price | Amount |
|---|---|---|---|---|
| CONOCO NO. 2 DIESEL FUEL | 8,190 | 8,301 | .27850 | 2,311.83 |
| FED TAX | | | | 332.04 |
| | | | Invoice Total | 2,643.87 |

Stamped on the invoices by the defendant was a breakdown for its accounting purposes, as follows:

| Account No. | Sub. No. | Term No. | Amount | Sales No. | Type of Equip. | Gallons Diesel Gas |
|---|---|---|---|---|---|---|
| 1151 | 4 | | 2311.83 | | | 8301 |
| 4711 | | 39 | 332.04 | | | |

Then, without explanation or notice of any kind, commencing July 15, 1975, the subsequent billings showed gallons of fuel delivered and the total price due from defendant to plaintiff for the purchase, as shown by the following representative invoice:

162

CONOCO                                          Invoice
                   CONTINENTAL OIL COMPANY
                              Remit to:
                              BOX 947
                              KANSAS CITY, MISSOURI
                              64141
Sold IDEAL TRUCK LINES              Invoice No. 091383
To NORTON, KS 67654                 Invoice Date 07-15-75
                    24134645 00  Terms NET 30

| Shipped to and Destination NORTON KANSAS | Contract | F.O.B. | Dest. ✿ | Origin | Prepaid ✿ | Collect |
|---|---|---|---|---|---|---|

| Date Shipped | How Shipped | Cust.Order | Our Order No. | GOSI or Tfr. | Car or B/L No. |
|---|---|---|---|---|---|
| 7-10 | CONOCO | | | 2691 | 1517 |

| Description | Gross Gallons or Units | Net Gallons | Price | Amount |
|---|---|---|---|---|
| CONOCO NO. 2 DIESEL FUEL | 8,191 | 8,117 | .28350 | 2,301.17 |
| | | | Invoice Total | 2,301.17 |

Stamped on the invoices by the defendant was the following breakdown for accounting purposes:

| Account No. | Sub. No. | Term No. | Amount | Sales No. | Type of Equip. | Gallons Diesel Gas |
|---|---|---|---|---|---|---|
| 1151 | 4 | X | 1976.49 | | | 8117 |
| 4711 | | 99 | 324.68 | | | |

The itemization of the federal excise taxes was omitted, and the trial court found by implication that defendant, in good faith, believed that the charge for the excise tax was therefore included in the lump sum billed.

As can be seen from the calculations of defendant on the invoice dated July 15, 1975, and all invoices until May 17, 1978, defendant's actions remained consistent. Defendant considered the billing by plaintiff as the total amount owed for fuel oil purchased and that as with past billings and their previous understanding, course of dealing and/or contract, that plaintiff had charged and billed for the federal excise tax authorized to be paid by plaintiff for defendant's benefit. That belief is evidenced by defendant's calculations in determining the amount of federal tax paid on the purchase of the gallons of fuel oil listed on the invoice.

I agree with the trial court that plaintiff's Exhibit No. 2 did not constitute a contract. Assuming arguendo that the document did constitute a contract between the parties, I think the evidence fails to show a breach of said contract by defendant. Defendant purchased fuel oil and, upon plaintiff's invoice billings for these purchases, paid in full the amounts billed by plaintiff. Since defendant did not breach the contract, plaintiff does not have a cause of action.

Further, the mistake of plaintiff in failing to bill defendant for the excise tax as provided in Exhibit No. 2 was the sole mistake of plaintiff, and the evidence failed to establish that the failure on the part of plaintiff to charge, bill and collect from defendant said sum was not caused by the fraud of defendant, but by a mistake, error, oversight and negligence of plaintiff's agents and employees. Still further, the evidence failed to substantiate that defendant knew or should reasonably have known from the past relationship of the parties that he owed more than he was billed.

It should also be noted that the rule of law as stated by the majority that "[a] person is presumed to have seen what he could have seen had he looked" (*Horton v. Atchison, T. & S. F. Rly. Co.,* 161 Kan. 403, Syl. ¶ 8), certainly is not questioned as it is used in the cited case under the facts there existing (negligence and contributory negligence considered in a railroad crossing accident). I fail to see any application of this rule of law to the facts of this case, which is primarily based upon contract.

Since the aforementioned rule is inapplicable in this contract case, and since the trial court found that the mistake that occurred was the mistake of plaintiff in failing to bill defendant, either separately or jointly, for the excise tax, and did not find that defendant should have known that he was not being billed for the four cents per gallon excise tax, I feel that the only mistake that occurred in this case was the mistake of plaintiff. Therefore, it was a unilateral mistake and not a mutual mistake as found by the majority, and the law governing such a problem is controlled by the following principles.

The law in Kansas is clear and well-established that a unilateral mistake by one of the parties to a contract prohibits the use of equity by the courts to adjust the loss suffered by one's unilateral mistake.

"In the absence of fraud, a unilateral mistake is insufficient to relieve the mistaken party from the terms of the agreement except where (a) hardship amounting to injustice would be inflicted by holding the mistaken party to the agreement and where it would be harsh and unreasonable to enforce it; and (b) the mistake was known to the other party to the contract." *Squires v. Woodbury*, 5 Kan. App. 2d 596, Syl. ¶ 4, 621 P.2d 443 (1980), *rev. denied* 229 Kan. 671 (1981).

When one views the nature of the claimed amount by plaintiff in the context of its total operation, I fail to find a hardship amounting to an injustice, and I do not find it harsh and unreasonable in any way to require plaintiff to accept the consequences of its unilateral mistake.

I would affirm.