**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 4, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

BADWEY OIL, INC.,
a Kansas corporation,

      Plaintiff-Appellant,

v.

CONOCOPHILLIPS PETROLEUM
CO., formerly known as Phillips
Petroleum Company,

      Defendant-Appellee.

No. 09-3001
(D.C. No. 6:07-CV-01353-MLB-DWB)
(D. Kan.)

---

**ORDER AND JUDGMENT**[*]

---

Before **TACHA**, **ANDERSON**, and **EBEL**, Circuit Judges.

---

Badwey Oil, Inc. (Badwey), appeals from the district court's entry of
summary judgment in favor of ConocoPhillips Petroleum Co. (Conoco) on the
ground that Badwey's breach of contract claims were barred by a statute of
limitations. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument. This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel. It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## Background

Since 1960, the parties have had a business relationship, initially through their predecessors, Badwey Oil Company and Phillips Petroleum Company, in which Badwey served as a branded marketer for Conoco, supplying Conoco's gasoline products to stations displaying Conoco's logo. Historically, Badwey gave the stations ten days to pay for the products and Conoco gave Badwey twelve days to pay. This credit arrangement afforded Badwey two days to collect from the stations and pay Conoco.

Effective October 1, 2001, the parties entered into a written Branded Marketer Sales Contract (BMS Contract). The BMS Contract required that unless Conoco advanced credit to Badwey, Badwey was required to pay for products in advance or at the time of delivery. Among other things, the contract further provided that Conoco could extend credit to Badwey on "such terms as [Conoco] shall specify from time to time," that in its "sole discretion" Conoco could modify credit terms, and that Conoco reserved the right to withdraw credit at any time upon notice to Badwey. Aplt. App. at 28, ¶ 8.c.

After Conoco changed its accounting system in 2002, Badwey began receiving bills for fuel it claimed it did not purchase and multiple bills for single purchases. In November 2002, Conoco informed Badwey that its outstanding balance was nearly $800,000. Badwey disagreed and requested an accounting. According to Badwey, the parties reached an oral agreement whereby Conoco

would provide an accounting if Badwey paid roughly half of the disputed balance on its account ($398,805.01) and agreed to satisfy any remaining balance through rebates from six new stations branded with Conoco's logo. Badwey paid, but in February 2003, Conoco advised Badwey that it could not complete the accounting.

Two months later, in April 2003, Conoco acknowledged but refused to apply a $160,000 credit to Badwey's account, and tried to secure, via wire transfer from Badwey's bank account, payment for $94,000 it claimed Badwey owed. The wire transfer did not go through because without the credit, Badwey had insufficient funds. Conoco then cancelled all credit sales to Badwey, requiring it to pre-pay for all purchases, and stopped giving Badwey discounts.

For several years, the parties continued to do business and, according to Badwey, attempted to resolve Badwey's disputed debts and negotiate the financial terms of their relationship. In October 2006, Conoco notified Badwey that effective January 19, 2007, a contract Conoco referred to as the "Petroleum Marketer Agreement dated March 1, 2003" would be terminated. Aplt. App. at 156. The termination of that contract apparently severed the business relationship completely.

Badwey filed this diversity suit on November 13, 2007, asserting claims of breach of contract and breach of the covenant of good faith and fair dealing. Badwey sought $1,054,800 in lost profits due to Conoco's April 2003 decision to

cancel credit sales to Badwey, which allegedly caused Badwey to cancel credit agreements with its customers and effectively put the company out of business. Badwey also sought the return of the $398,805.01 it had paid as part of the purported November 2002 oral agreement, apparently based on the theory that Conoco had breached the oral agreement when it failed to provide an accounting.

Conoco filed counterclaims for, among other things, breach of the BMS Contract, and moved for judgment on the pleadings. Because Badwey attached an affidavit to its response, the district court, with Badwey's agreement, converted the motion to one for summary judgment. Applying Kansas law, the court concluded that Badwey's claims were barred by the four-year statute of limitations for sales contracts under Kansas's version of the Uniform Commercial Code (UCC), Kan. Stat. Ann. § 84-2-725, because the cause of action arose no later than April 2003, when Conoco cancelled all credit sales to Badwey, and Badwey did not file its complaint until November 2007.[1] The court further determined that Badwey was not entitled to tolling on the theory of continuing contract or equitable estoppel. Because Conoco's counterclaims remained pending, the district court certified that the entry of summary judgment on Badwey's claims was appealable under Fed. R. Civ. P. 54(b). Badwey sought

---

[1] The court also noted that a three-year statute of limitations applies to oral contracts under the UCC, Kan. Stat. Ann. § 60-512, but did not explicitly apply the shorter period to the alleged February 2003 breach of the oral promise to render an accounting.

reconsideration by filing a motion under Fed. R. Civ. P. 59, which the district court denied. Badwey then appealed.

**Discussion**

"We review the district court's grant of summary judgment de novo, applying the same legal standard used by the district court." *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999). Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "When applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Simms*, 165 F.3d at 1326.

Badwey raises three contentions on appeal, that the district court (1) should have applied a five-year statute of limitations applicable to written contracts set forth in Kan. Stat. Ann. § 60-511(1) rather than the four-year UCC statute of limitations applicable to sales contracts; (2) erred in concluding that Badwey's injury was reasonably ascertainable in April 2003; and (3) should have concluded that Conoco was equitably estopped from raising the statute of limitations defense. We address the issues in order.

Badwey did not raise its argument that a five-year statute of limitations applied to its claim until its Rule 59 motion.[2]  Despite noting the general principle that a Rule 59 motion is not the place to advance new arguments that could have been raised before, the district court reiterated its conclusion that the BMS Contract was a sales contract subject to the four-year statute of limitations under the UCC.  Aplt. App. at 204 (explaining that the contract "unambiguously states that it is a sales contract").  We agree.  The BMS contract flatly states, "This is a sales contract."  *Id.* at 33, ¶ 16.  The UCC provision states that "[a]n action for breach of any contract for sale must be commenced within four years after the cause of action has accrued."  Kan. Stat. Ann. § 84-2-725(2).  And Kansas's version of the UCC has been specifically applied to contracts for the sale of fuel.  *See Continental Oil Co. v. Ideal Truck Lines, Inc.*, 638 P.2d 954, 957 (Kan. App. 1981).  Therefore, Badwey's first argument fails.

As to Badwey's second argument, the district court concluded that Badwey's injury was reasonably ascertainable no later than April 2003 because by then, Conoco had refused to provide an accounting and ceased advancing credit to Badwey.  Badwey asserts that in April 2003, it had no reason to believe Conoco would not ultimately honor its oral agreement of November 2002.  Instead, Badwey claims, it was not until "continued negotiations failed to bring about a

---

[2]     Indeed, in its brief in opposition to Conoco's motion, Badwey asserted that the UCC governed the contract but never addressed the UCC's four-year statute of limitations, as Conoco pointed out in its reply brief.

correction of this problem that [it] had reason to know it had been permanently injured." Aplt. Br. at 15. This argument is legally unfounded because, under Kansas law, a cause of action for breach of contract "accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach." Kan. Stat. Ann. § 84-2-725(2). Any breach of the November 2002 oral agreement occurred in February 2003, when Conoco informed Badwey that it could not complete the promised accounting, and any breach of the credit provisions of the written agreement of November 2001 occurred in April 2003, when Conoco ceased advancing credit to Badwey without the written notice required under the BMA. Significantly, none of the damages Badwey sought arose from any alleged breach of contract arising from Conoco's termination of a written contract in 2007.[3] Instead, Badwey sought damages based on alleged breaches that occurred no later than April 2003, and that is the latest that its cause of action accrued. Badwey filed its action on November 13, 2007, more than four years later. Therefore, its claims were barred under Kan. Stat. Ann. § 84-2-725.

In its final argument, Badwey contends that equitable estoppel bars Conoco's reliance on the statute of limitations because, after the failed wire transfer in April 2003, Conoco "did not notify Badwey that it was terminating

[3]     As the district court observed, the BMS Contract terminated by its own terms on September 30, 2004. The contract Conoco terminated in 2007 apparently was a different contract, and we find no explanation of its significance in the record or parties briefs.

-7-

their contract until late in 2006." Aplt. Br. at 18. Badwey accuses Conoco of "deliberately wait[ing] nearly four . . . years after it took the payment from Badwey to notify Badwey it was terminating the contract." *Id.* This argument is without merit. Under Kansas law, "[a] party asserting equitable estoppel must show that another party, by its acts, representations, admissions, or silence when it had a duty to speak, induced it to believe certain facts existed" and that it "rightfully relied and acted upon such belief and would now be prejudiced if the other party were permitted to deny the existence of such facts." *PMA Group v. Trotter*, 135 P.3d 1244, 1250 (Kan. 2006) (quotation omitted). Although Badwey argued that Conoco continued to promise an accounting and negotiate the terms of the parties' relationship, the only supporting evidence it submitted in opposition to Conoco's motion was an affidavit from its owner, Nick Badwey, which merely described the alleged breaches in 2003 and the termination letter Conoco sent in October 2006, and reiterated that Conoco never provided the accounting. *See* Aplt. App. at 154-55. Nothing in the affidavit provided factual support for Badwey's tolling argument sufficient to defeat summary judgment. And we see no significance in Conoco's termination of a written contract in 2007. Accordingly, the district court properly concluded that Conoco's alleged promise to provide an accounting was insufficient to invoke equitable estoppel. *See Sweet*

-8-

*v. Hentig*, 24 Kan. 497 (1880) (holding that even continued promises to correct a wrong known to a plaintiff do not warrant the application of equitable estoppel).

The judgment of the district court is AFFIRMED.

Entered for the Court


Deanell Reece Tacha
Circuit Judge